STATE of Minnesota, Respondent,

v.

James Allen DWIRE, Lowell Dale Kramer, Fred Hendrickson, petitioners, Appellants.

No. C2-86-1695.

Supreme Court of Minnesota.

July 24, 1987.

John W. Lundquist, Minneapolis, for James Allen Dwire.

John L. Holahan, Jr., Edina, for Lowell Dale Kramer.

Paul W. Rogosheske, St. Paul, for Fred Hendrickson.

Robert A. Stanich, Sp. Asst. Atty. Gen., St. Paul, Pete Kasal, Asst. Lyon Co. Atty., Glencoe, for respondent.

## OPINION

SIMONETT, Justice.

This appeal raises issues of whether either our rules or common law prohibit the issuance of a criminal complaint while an indictment for the same offense, which is subsequently held invalid, is pending. The court of appeals reversed the trial court's dismissal of the complaints and ruled that complaints issued under such circumstances were valid. *State v. Dwire*, 401 N.W.2d 124 (Minn.App.1987). We affirm the result reached by the appeals court but analyze the issues differently.

In October 1981, defendant-petitioners James Dwire and Fred Hendrickson formed American Energy Farming Systems, Inc. (AEFS) to develop, promote, and market the Jerusalem artichoke, a species of sunflower, as a potential source of energy, food, and livestock feed. Defendant-petitioner Lowell Kramer, a former television evangelist, was hired in January 1982 as a consultant to help manage and promote the company. From Fall 1981 to Spring 1983, AEFS received millions of dollars from approximately 2,400 farmers who contracted to purchase seed and grow artichokes. In

March 1983, following an investigation by the Minnesota Attorney General's office, AEFS agreed to pay fines, discontinue their marketing program, and offer refunds to growers. With potential refunds of $18 million, AEFS filed for bankruptcy in May 1983.

In the Fall of 1984, the McLeod County Attorney impaneled a multi-county grand jury to investigate AEFS. A paralegal involved in investigating AEFS testified before the grand jury and then remained in the grand jury room to help with exhibits during the testimony of seven other witnesses. Indictments were returned against the defendants for theft and diversion of corporate property. Defendants' motions to dismiss the indictments, based on the unauthorized presence of a paralegal in the grand jury room, were denied by the trial court. The court of appeals reversed on February 18, 1986, and this court denied further review on April 11, 1986. *See Dwire v. State*, 381 N.W.2d 871 (Minn.App. 1986), *pet. for review denied* (April 11, 1986).

While the appeal was pending in the court of appeals, new complaints charging defendants with some of the same offenses were issued. The complaints were issued to avoid a potential bar of the charges by operation of the 3–year statute of limitations. After the indictments were dismissed by the court of appeals, the prosecutors elected to proceed under the complaints. At the omnibus hearing on August 28, 1986, defendants moved to dismiss the complaints.[1] The motions were granted in an order filed September 29, 1986, on the grounds that the state had not complied with Minn.R.Crim.P. 17.06, subd. 4(3) (see footnote 2, *infra* ), and, having selected the indictment procedure, the prosecution could not issue complaints before dismissing the indictments.

The court of appeals reversed, holding (1) the defect in the indictments was noncurable, thus Rule 17.06, subd. 4(3), dealing with curable defects was inapplicable; and

(2) no rule, statute, or case law precluded the state from filing a criminal complaint while an indictment charging substantially the same offenses was pending. We granted defendants' petitions for further review.

The issues in this case arise out of the dilemma the McLeod County prosecutor faced at the end of December 1985. The indictments, then pending on appeal, charged crimes committed between December 30, 1982, and June 30, 1983. A 3–year statute of limitations applied to the charges. *See* Minn.Stat. § 628.26(e) (1986). It was unclear whether this 3–year period would expire on December 31, 1985, or whether the limitations period would be tolled from the date of filing the indictments. The prosecutor had three options, none of which clearly appeared to be the proper course of action at the time. First, he could dismiss the indictments and begin the prosecution again. However, the trial court had upheld the validity of the indictments, and there was the likelihood, as the prosecutor could believe, that the court of appeals would do so also. Or, second, the state could wait for the court of appeals' decision and, if the indictments were dismissed, recommence the prosecution within 7 days as provided by Rule 17.06, subd. 4(3). But by that time December 31, 1985, would have passed, the statute of limitations might have expired, and it was unclear whether a prosecution could be recommenced pursuant to Rule 17.06, subd. 4(3), after expiration of the limitations period. Finally, as a third option, the prosecutor could issue complaints before December 31, 1985, without dismissing the indictments so that if the indictments were dismissed by the court of appeals, the prosecution could continue under the complaints. However, it was unclear whether complaints issued while indictments were pending were valid. The prosecutor chose the third course of action.

Thus, the issues presented are: (1) Does Rule 17.06, subd. 4(3), establishing procedures to be followed after dismissal of an

---

**1.** Defendants' first motions for dismissal of the complaints were filed March 24, 1986. In an order filed May 2, 1986, the trial court determined that the motions were not properly before the court at that time but would be considered at the omnibus hearing.

indictment for a curable defect, apply here? (2) Do the rules of criminal procedure, our case law, or policy considerations prohibit a prosecutor from issuing a complaint after dismissal of an indictment? (3) If not, do jurisdictional rules or the rule against serialized prosecution prohibit the state from issuing complaints while indictments for the same offenses are pending? and (4) Did the state comply with Rule 17.06, subd. 4(3)?

■ 1. We hold that Rule 17.06, subd. 4(3), does apply here.[2] This rule establishes the procedures to be followed to preserve a prosecution when an indictment is dismissed for a "curable defect." The court of appeals held the presence of an unauthorized person in the grand jury room was a noncurable defect, hence the rule did not apply. We disagree. Although we can imagine a situation where grand jury abuses are so prejudicial to a defendant's case or so violative of due process and fundamental fairness as to constitute a noncurable defect, that is not the situation here.[3] Nor do we have the circumstance contemplated by the comment to Rule 17.06, where the defect cannot be cured "at the time of dismissal" because, for example, the prosecutor lacks sufficient evidence to establish probable cause. Here, the defect which resulted in dismissal of the indictments against the defendants

was curable. For example, a new grand jury could have been convened without the unauthorized individual present. Defendants contend this is what the state should have done. Indeed, defendants contend the prosecutor's sole course of action was to call a new grand jury to reindict.

■ 2. This leads to the second issue: Once the indictment is dismissed, does Rule 17.06 or our case law prohibit the state from pursuing the alternative route of a criminal complaint? Nothing in our case law, and nothing in the language of Rule 17.06, subd. 4(3), prohibits a prosecutor from continuing a prosecution by complaint after dismissal of an indictment. Indeed, the rule provides: "If the dismissal is for * * * a defect that could be cured or avoided by an amended or new indictment, *or complaint*, further prosecution for the same offense shall not be barred * * *." (Emphasis supplied.)

Nor is there a strong policy reason for barring prosecution by complaint after dismissal of an indictment. Petitioners are concerned that this practice could lead to prosecutorial abuse of the grand jury system without the opportunity for meaningful judicial review of the alleged abuses. We believe this concern is unwarranted. In the rare case where a prosecutor abuses the system such that the wrong to the defendant or the system cannot be cured,

---

**2.** Minn.R.Crim.P. 17.06, subd. 4(3), provides:

(3) *Dismissal for Curable Defect.* If the dismissal is * * * for a defect that could be cured or avoided by an amended or new indictment, or complaint, further prosecution for the same offense shall not be barred, and the court shall on motion of the prosecuting attorney, made within seven (7) days after notice of the entry of the order granting the motion to dismiss, order that defendant's bail or the other conditions of his release be continued or modified for a specified reasonable time pending an amended or new indictment or complaint.

* * * The specified time for such amended or new indictment or complaint shall not exceed sixty (60) days for filing a new indictment or seven (7) days for amending an indictment or complaint or for filing a new complaint. During the seven-day period for making the motion and during the time specified by the order, if such motion is made, dismissal of the indictment or complaint shall

be stayed. If the prosecution does not make the motion within the seven-day period or if the indictment or complaint is not amended or if a new indictment or complaint is not filed within the time specified by the order, the defendant shall be discharged and further prosecution for the same offense shall be barred unless the prosecution has appealed as provided by law, or unless the defendant is charged with murder and the court has granted a motion to dismiss on the ground of the insufficiency of the evidence before the grand jury.

**3.** Generally, federal cases hold that grand jury abuses and irregularities can be cured by reindictment unless the abuse is outrageous and provided the new grand jury would not be affected by prior government improprieties. *See, e.g., United States v. Reed,* 726 F.2d 570, 578 (9th Cir.1984); *United States v. Serubo,* 604 F.2d 807, 818–19 (3d Cir.1979); *United States v. Lawson,* 502 F.Supp. 158, 172 (D.Md.1980); *United States v. Hill,* 494 F.Supp. 571, 573 (S.D.Fla.1980).

further prosecution is barred. If the defendant has evidentiary, probable cause, due process, or other constitutional concerns, these can be raised at the omnibus hearing. *See* Minn.R.Crim.P. 11.02, 11.03, 11.04.

■ 3. Even if the state is not barred from proceeding by complaint after an indictment has been dismissed, it is defendants' contention that the trial court had no jurisdiction to issue new complaints while indictments for the same offenses were still pending in the court of appeals. The jurisdictional rule is:

> Pending a duly executed appeal, the jurisdiction of the trial court is *suspended* only as to those matters necessarily involved in the appeal, not as to those matters which are independent of, or which are supplemental to, the appeal or collateral to the proceeding in which the appealed order or judgment was rendered.

*State v. Barnes*, 249 Minn. 301, 302–03, 81 N.W.2d 864, 866 (1957) (footnotes omitted; emphasis in original). *See also* 4 Am. Jur.2d *Appeal and Error* § 355 (1962). The purpose of this rule is to "avoid the confusion and waste of time potentially arising from having the same issue before two courts at the same time." *Spaeth v. City of Plymouth*, 344 N.W.2d 815, 825 (Minn.1984). The issue before the court of appeals was whether the presence of an unauthorized person in the grand jury room warranted dismissal of the indictments. The trial court's decision to issue the complaints did not require consideration of this issue; issuance of the complaints had nothing to do with the merits of the defendants' appeal of the indictments. Rather, the complaints provided an alternative means of prosecuting the defendants in the event the indictments were dismissed. Thus, the decision to issue complaints was not "necessarily involved" in the appeal. The trial court had jurisdiction to issue the complaints.[4]

■ 4. Neither does this case, as petitioners contend, involve serialized prosecution prohibited by Minn.Stat. § 609.035 (1986). *See State v. Krech*, 312 Minn. 461, 465, 252 N.W.2d 269, 272 (1977). Serialized prosecution occurs when a defendant is allegedly guilty of multiple crimes arising out of a single course of conduct and the prosecutor attempts to prosecute the various offenses in more than one proceeding. *See State v. Zuehlke*, 320 N.W.2d 79, 81 (Minn.1982); *City of Moorhead v. Miller*, 295 N.W.2d 548, 549 (Minn.1980). Here, the prosecutor is not attempting to prosecute the various charges in separate proceedings at different times. Rather, the prosecutor has instituted two alternative charging procedures in an effort to avoid a perceived statute of limitations problem.

■ As early as 1868 we held that an indictment cannot be set aside on the ground that another indictment is pending against the defendant in the same court for the same offense. *State v. Gut*, 13 Minn. (13 Gil.) 315, 325 (1868). The practice of having two indictments pending against the same defendant for the same offenses has also been uniformly approved in the federal courts since at least 1853. *United States v. Bowles*, 183 F.Supp. 237, 243 (D.Me. 1958); *see also DeMarrias v. United States*, 487 F.2d 19, 21 (8th Cir.1973). Where there is a proper reason for doing so, we see no problem with having two charging instruments which charge the

---

**4.** *State v. Grose*, 396 N.W.2d 874 (Minn.App. 1986), relied on by the defendants, is, we think, distinguishable. There the court of appeals affirmed the trial court's dismissal of indictments. The next day the state moved the trial court for an extension of time in which to reindict pursuant to Rule 17.06, subd. 4(3). The trial court, however, declined to consider the motion because, as the court of appeals noted with approval, the trial court claimed "it lacked jurisdiction as the matter had been appealed to [the court of appeals]," and judgment of dismissal had not yet been entered by the clerk of appel-

late courts. *Id.* at 875. *Grose* is distinguishable on two grounds: First, the indictments were dismissed for noncurable defects (prejudicial prosecutorial misconduct and denial of constitutional rights), so that Rule 17.06 was inapplicable; and, second, the state's motion to reindict "necessarily involved" the very same matter then pending on appeal because the issue on appeal was whether the defect in the indictment was noncurable, in which event any further prosecution was barred. Clearly, in *Grose*, the lower court lacked jurisdiction under the *Barnes* rule to revive a barred prosecution.

same offenses pending at one time, provided jeopardy has not attached, the defendant is not prejudiced, there is no serialized prosecution, and due process is not violated. *See United States v. Grady*, 544 F.2d 598, 602 n. 4 (2d Cir.1976).

Defendants claim *State v. Dehler*, 257 Minn. 549, 102 N.W.2d 696 (1960), holds to the contrary. Dehler was indicted in 1941, imprisoned for 17 years, released in 1959 due to a jurisdictional defect in the original proceedings, and re-arrested in 1959 under the original 1941 indictment. He moved to dismiss the 1941 indictment raising issues of former jeopardy, speedy trial, cruel and unusual punishment, and denial of due process. While the case was pending on appeal, the state convened a new grand jury and defendant was arraigned on a new 1959 indictment. This court determined that because the 1941 indictment was valid and the state could not prosecute relator under both indictments, the state must proceed under the 1941 indictment. To the extent *Dehler* might be interpreted to hold that the state may never have two indictments or charging instruments pending at the same time, we decline to give it such an expansive interpretation.

■ 5. The next issue is whether the state complied with the procedures of Rule 17.06, subd. 4(3). Under this rule, if an indictment is dismissed for a curable defect, dismissal is automatically stayed for 7 days, during which time the prosecutor may move for a continuance of the stay pending amendment of the defective indictment or complaint, issuance of a new complaint, or for the impaneling of a new grand jury and issuance of a new indictment. *See* Rule 17.06, subd. 4(3), and comment thereto. If the motion is not timely made, the comment to the rule says (unless one of the exceptions in the rule applies) that further prosecution is barred. *See also State v. Viergutz*, 288 N.W.2d 693 (Minn.1980). Here no motions were made within the 7–day period, and defendants argue any further prosecution must, therefore, be barred. We disagree. The prosecutor's decision to continue prosecution under the complaints filed while the indict-

ment appeals were still pending satisfies the requirement of the rule that the state elect a means of continuing the prosecution within 7 days of the dismissal.

■ 6. We requested the parties to brief also the statute of limitations issue. Although under our disposition of this appeal we are not required to decide the issue, it is that issue which has created the problem here, and we believe it is, therefore, appropriate to discuss the statute of limitations. In our view, the prosecutor's concern that the statute of limitations would expire in December 1985, at the end of 3 years, although reasonable, was incorrect. In *State v. Heffelfinger*, 197 Minn. 178, 266 N.W. 751 (1936), we held that an amended indictment filed after the statute of limitations expired was a continuation of the original indictment and related back to the date of the original indictment. In other words, the statute of limitations was, in effect, "tolled" during the pendency of an indictment containing a defect curable by amendment.

Although we did not decide whether a defective indictment curable by reindictment tolled the statute of limitations, the case law cited with approval in *Heffelfinger* would support this view. Several recent cases in state and federal courts hold that a defective indictment tolls the statute of limitations. *See Grady*, 544 F.2d at 601; *State v. Strand*, 674 P.2d 109, 112 (Utah 1983); *State v. Stewart*, 140 Vt. 389, 438 A.2d 671 (1981). The rationale is that once an indictment is brought,

> [T]he defendants are put on timely notice, because of the pendency of an indictment, filed within the statutory time frame, that they will be called to account for their activities and should prepare a defense.

*Grady*, 544 F.2d at 601. We believe this is the sensible approach to be taken. In other words, in this case, the prosecutor could have elected to reindict when his first indictments were finally dismissed, subject, of course, to compliance with the provisions of Rule 17.06, subd. 4(3). Even though over 3 years would have elapsed by then, the limitations statute would have been

tolled for the period the defective indictment was pending.

Affirmed.