**STATE of Minnesota, Appellant,**

v.

**Derek James HOOKOM, Respondent.**

**No. C9–91–798.**

Court of Appeals of Minnesota.

Aug. 27, 1991.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Roger S. Van Heel, Stearns County

Atty., Dennis A. Plahn, Asst. County Atty., St. Cloud, for appellant.

Marsh J. Halberg, Thomsen & Nybeck, P.A., Edina, for respondent.

Considered and decided by PETERSON, P.J., and FOLEY and KALITOWSKI, JJ.

## OPINION

FOLEY, Judge.

The state appeals from a pretrial order granting respondent Derek James Hookom's motions to suppress statements made by Hookom and to dismiss for lack of probable cause. We reverse and remand with instructions.

## FACTS

On January 5, 1991, at 1:27 p.m., E.I. contacted the St. Cloud Police Department and reported to Investigator Peter Legus that she had been sexually assaulted. She told him she had attended a party the previous evening at her cousin's fraternity house. She stated she had arrived at around 10:30 p.m. At approximately 1 a.m., she was introduced to Hookom and had one brief conversation with him.

E.I. admitted drinking too much and feeling dizzy. She stated that at around 2 a.m. she passed out on a couch in the main floor living room, and the next thing she remembered was waking up in the basement on her cousin's bed with her pants down around her ankles and her bra off. She said she could "feel somebody doing something to me inside," which she thought was the person's finger or tongue. She subsequently recognized the person as Hookom and immediately got up and left the room.

Legus instructed E.I. to call her cousin to get Hookom's address and phone number. Thereafter, Legus instructed her to call Hookom and question him about what happened. Both phone conversations were made from Legus' office and were tape-recorded without the knowledge of E.I.'s cousin or Hookom. Legus told E.I. questions to ask. In particular, he instructed her to inform Hookom she was not on the pill and needed to know exactly what happened. Legus stated he told E.I. to use this approach because

> a lot of times * * * men are afraid to maybe getting a woman pregnant, and so that's one of the things that I devised that I thought would be good for her to bring up.

During the recorded conversation, Hookom repeatedly apologized to E.I. He stated they were lying spoon-position in bed and each began pushing. Thereafter, he began taking her pants off, and she helped by lifting up her hips. He acknowledged she was probably half asleep at the time and probably thought he was somebody else. During the taped conversation, he denied having sexual intercourse with her, but he admitted to having oral sex and maybe penetrating her with his finger.

Later that evening, Legus went to Hookom's apartment to arrest him. Upon finding Hookom was not home, Legus left his card with Hookom's roommates and asked them to have Hookom get in touch with him. Legus left a message with dispatch that, if Hookom came to the station, he wanted him arrested.

At approximately 11:30 that evening, Hookom voluntarily came to the St. Cloud police station. The officers present contacted Legus, who told them to arrest Hookom and not allow him to have any phone calls. The officers arrested Hookom and refused his request to make a phone call.

The following morning Legus brought Hookom to his office and read him a warning and statement of rights. Legus testified at the hearing:

> At one point [Hookom] did make reference that he has got a friend of his that's a police officer in Texas and that maybe he should talk to him.

Legus stated he told Hookom: " 'If you would like to call an attorney, I will make the phone available to you.' " Hookom thereafter decided to talk to Legus and signed a waiver. Legus testified Hookom gave a verbal statement but when he asked Hookom for a taped statement, Hookom "thought he better talk to an attorney." Legus stated he stopped all questioning at that time.

In Hookom's verbal statement, as transcribed by Legus, he stated, in part:

> I was laying spoon style with [E.I.] and I would push forward and she would push back. I kissed her on the neck and she moaned. I rubbed her abdomen and she rolled on her back and I began taking her pants off, after I unbuttoned them, and she had raised up to assist in taking them off. I had no conversation with her. I had oral sex with her for about ten seconds. She then pulled me up and I thought she wanted to kiss me and she had a confused look on her face. I said, "this is Derek, [your cousin's] friend." She immediately got up and left saying she had to go to the bathroom. When we were in bed I had no conversation with her. I did not think it was against her wishes. I really didn't know her state of mind. I think I had better talk with an attorney.

In the subsequent omnibus hearing, the trial court suppressed the above statements as obtained in violation of Hookom's constitutional right to consult with counsel. The trial court also suppressed Hookom's statements in the tape-recorded phone conversation with E.I., finding they were obtained through an unreasonable search and seizure. Finally, the trial court granted Hookom's motion to dismiss for lack of probable cause.

## ISSUES

1. Did the trial court clearly and unequivocally err in suppressing the tape-recorded phone conversation between E.I. and Hookom, and would this excluded evidence have a critical impact on the outcome of the trial?

2. Did the trial court clearly and unequivocally err in suppressing Hookom's statements to the investigating officer, and would this excluded evidence have a critical impact on the outcome of the trial?

3. Did the trial court clearly and unequivocally err in granting Hookom's motion to dismiss for lack of probable cause?

## ANALYSIS

Where the state appeals from a pretrial order, this court will only reverse if the state demonstrates clearly and unequivocally that the trial court erred in its judgment and, unless reversed, that error will have a critical impact on the outcome of the trial. *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977). The trial court's findings are erroneous if, after viewing the record, this court reaches a firm conviction that a mistake has been made. *State v. Kvam*, 336 N.W.2d 525, 529 (Minn.1983). In order to establish critical impact, the state must show the lack of suppressed evidence significantly reduces the likelihood of successful prosecution. *State v. Joon Kyu Kim*, 398 N.W.2d 544, 551 (Minn.1987).

1. The state contends the tape-recording of the phone conversation between E.I. and Hookom did not violate Hookom's fourth amendment right. In *State v. Bellfield*, 275 N.W.2d 577 (Minn.1978), the Minnesota Supreme Court held:

> Because one of the parties to these conversations * * * voluntarily consented to the taping of these calls, no warrant was required by either the Federal or state statutes relating to interception and recording of telephone communications, and no Fourth Amendment issue is presented.

*Id.* at 578 (citations omitted). Neither party argues that E.I. *involuntarily* consented to the recordings, therefore, the tapes are admissible as long as adequate foundation is provided. *See id.* The state has shown that the trial court clearly and unequivocally erred in suppressing the tape-recording in violation of the fourth amendment.

Contrary to Hookom's argument, admission also would not be in violation of Hookom's fourteenth amendment right to due process. He contends the approach used by Legus in directing E.I. in her conversation with Hookom was designed to apply stress upon Hookom to obtain a confession from him. Applying the totality of the circumstances, it cannot be said that Legus was attempting to extort a confession from Hookom. *Compare State v.*

*Jensen,* 349 N.W.2d 317, 319 (Minn.App. 1984) (defendants promised leniency in exchange for confessions and threatened with harsh treatment unless confessions given).

■ The state has also shown the erroneous suppression had a critical impact. The trial court stated:

Without [Hookom's] statements there is insufficient evidence to establish probable cause that [Hookom] committed criminal sexual conduct in the third degree.

In addition, where the trial court suppresses a confession in a criminal sexual conduct case, "the suppression normally will significantly reduce the likelihood of a successful prosecution." *State v. Ronnebaum,* 449 N.W.2d 722, 724 (Minn.1990).

■ 2. The state contends Hookom's statements to Legus during the interrogation were not obtained in violation of Hookom's fifth amendment right to consult with counsel. We agree. The record indicates that, before taking the verbal statement from Hookom, Legus told Hookom he would make a telephone available if Hookom wanted to call an attorney. Hookom declined and thereafter signed a waiver form and gave the statement.

In *State v. Robinson,* 427 N.W.2d 217 (Minn.1988), the Minnesota Supreme Court held that

when a suspect indicates by an equivocal or ambiguous statement, which is subject to a construction that the accused is requesting counsel, all further questioning must stop except that narrow questions designed to "clarify" the accused's true desires respecting counsel may continue.

*Id.* at 223. In this case, Hookom made a request during the interrogation about talking to a friend who was a police officer in Texas. When asked by Legus if he wanted a phone made available to talk with an attorney, Hookom declined and thereafter signed a waiver and gave the verbal statements. The officer's conduct comports with *Robinson.*

■ Hookom had also made a request to use the phone the preceding evening, but the request was not honored. However, no interrogation took place at that time.

Therefore, no violation of his constitutional right to counsel resulted. *See generally Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In any event, the harmless error analysis should be applied and, in doing so, we hold that under the totality of events, any error in not allowing a phone call the first night, when no interrogation took place, was harmless. *See State v. Forcier,* 420 N.W.2d 884, 886–87 (Minn.1988).

■ The trial court also found, however, that the voluntariness of Hookom's statements to Legus was suspect because of the presumption of coercion created when Hookom was retained in police custody overnight without being permitted to contact anyone outside the jail. In *Robinson,* a similar holding for approximately two days without being permitted to contact relatives or friends created a presumption of coercion. *Robinson,* 427 N.W.2d at 224; *see also, Arizona v. Roberson,* 486 U.S. 675, 685, 108 S.Ct. 2093, 2100, 100 L.Ed.2d 704 (1988) (where a three-day period elapsed, a presumption of coercion was created).

■ Nonetheless, in determining the issue of voluntariness of Hookom's statements, the "totality-of-the-circumstances" test again must be applied. *State v. Jackson,* 351 N.W.2d 352, 355 (Minn.1984). In this case, no interrogation was conducted the previous evening when Hookom requested to use the phone. The period of detention lasted overnight, not for two or three days as in the cases cited above. Consequently, no coercion can be said to have occurred in this case. The state therefore has adequately shown the trial court clearly and unequivocally erred in suppressing these statements. In addition, the critical impact of this suppression is supported by the same reasoning used in our discussion of the suppression of the tape recording.

■ 3. The state also appeals the dismissal of the charge of criminal sexual conduct in the third degree for lack of probable cause. An order of dismissal plainly has a critical impact on a case.

*State v. Ohrtman,* 466 N.W.2d 1, 2 (Minn. App.1991).

■ In determining questions of probable cause, the trial court must answer the question of whether, under the facts disclosed by the record, it is fair and reasonable to require the accused to stand trial. *State v. Florence,* 306 Minn. 442, 457, 239 N.W.2d 892, 902 (1976).

■ Hookom was charged with criminal sexual conduct in the third degree. Minn. Stat. § 609.344, subd. 1 (1990) states:

A person who engages in sexual penetration with another person is guilty of criminal sexual conduct in the third degree if any of the following circumstances exists:

\*   \*   \*   \*   \*   \*

(d) the actor knows or has reason to know that the complainant is mentally impaired, mentally incapacitated, or physically helpless \* \* \*.

"Physically helpless" means that

a person is (a) asleep or not conscious, (b) unable to withhold consent or to withdraw because of a physical condition, or (c) unable to communicate nonconsent and the condition is known or reasonably should have been known to the actor.

Minn.Stat. § 609.341, subd. 9 (1990).

In this case, E.I. reported that she had "passed out" on a living room couch after consuming approximately six beers. The next thing she remembered was waking up in a bed with her bra off and her pants pulled down to her ankles. She stated that she could "feel somebody doing something to me inside" and later realized that this person was Hookom.

■ In a prosecution for criminal sexual conduct, it is not necessary for the victim's testimony to be corroborated. *State v. Erickson,* 403 N.W.2d 281, 286 (Minn.App.1987), *pet. for rev. denied* (Minn. Apr. 29, 1987); Minn.Stat. § 609.-347, subd. 1 (1990). Consequently, there is sufficient evidence to establish probable cause to believe that a crime has been committed and that Hookom committed it. Therefore, it is clear and unequivocal the trial court erred in dismissing for lack of probable cause, and, unless reversed, this error will have a critical impact on the outcome of the trial.

A separate order for attorney fees will be issued.

### DECISION

It is clear and unequivocal the trial court erred in suppressing the tape-recorded statements and the statements to Legus and in finding a lack of probable cause. Unless reversed, these errors will have a critical impact on the outcome of the trial. Consequently, the trial court's decision is reversed and remanded for trial.

Reversed and remanded.