**STATE of Minnesota, Appellant,**

v.

**Susan Evelyn ROERS, Respondent.**

**No. C0-94-333.**

Court of Appeals of Minnesota.

Aug. 23, 1994.

Review Denied Oct. 14, 1994.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, James C. Backstrom, Dakota County Atty., Robert R. King, Jr., Lawrence F. Clark, Asst. County Attys., Hastings, for appellant.

Earl P. Gray, Mark D. Nyvold, Gray & Malacko Law Offices, St. Paul, for respondent.

Thomas J. Harbinson, Shakopee, for amicus curiae Minnesota County Attys. Ass'n.

Considered and decided by AMUNDSON, P.J., and HUSPENI and KALITOWSKI, JJ.

## OPINION

HUSPENI, Judge.

Respondent was indicted by a grand jury for first and second degree murder. The district court dismissed the indictment based on prosecutorial misconduct and grand jury irregularities, and the state appealed. This

court affirmed dismissal for grand jury irregularities but did not address the issue of prosecutorial misconduct. When the state subsequently moved to file a new complaint or indictment pursuant to Minn.R.Crim.P. 17.06, subd. 4(3), the trial court denied the motion, stating that its prior order dismissed the indictment for noncurable defects, thus barring the state from prosecuting respondent. Because we conclude that the state's conduct constituted curable defects, we reverse.

## FACTS

On August 6, 1992, one-year-old Ryan Ford died from a blunt force trauma to the head resulting in massive brain damage. A grand jury indicted Ryan's daycare provider, respondent Susan Evelyn Roers, for first and second degree murder following an investigation that included interviews with respondent and Ryan Ford's parents, a taped conversation between Ryan's mother and respondent, and a videotaped test to determine whether a person of respondent's size could have caused Ryan's fatal injury.

During a break in the grand jury proceedings, the prosecutors learned that grand juror 45 saw respondent at the Mall of America, where respondent worked. The grand juror told the prosecutors that she did not talk to respondent. Later, prosecutors learned that the grand juror had obtained information about respondent outside of the grand jury proceedings and had shared it with other grand jurors. There is some dispute as to whether the prosecutors knew before or after the indictment was returned that grand juror 45 was talking with other grand jurors about her meeting with respondent.[1]

An omnibus hearing in April 1993 revealed that grand juror 45 told other grand jurors that she had met respondent on the first night after the grand jury began hearing evidence and one night later, that her aunt or cousin worked with respondent, that respondent was pregnant, and that respondent's emotional state was "cold" and that she was a "strange person." During questioning of all grand jurors by the district court, one stated that grand juror 45's information interfered with the ability to be fair and impartial. The district court determined that grand juror 45 violated her oath of secrecy, and that her conduct tainted the grand jury proceedings.

In addition to its reliance on grand juror 45's conduct in dismissing the indictment, the district court also found that the accumulated irregularities in the investigation undermined respondent's right to a fair hearing. These irregularities included the state's (1) tailoring of the evidence so as to point to only one suspect, (2) improperly using Ryan Ford's mother to obtain information from respondent after respondent retained counsel, (3) improperly and frequently referring to the death of respondent's nephew throughout the grand jury hearing even though respondent had nothing to do with the death, (4) failing to remind a grand juror of her oath when it learned about her contact with respondent, (5) conducting a test that focused impermissibly on respondent, and (6) conducting two off-the-record discussions during the grand jury proceedings.

---

1. In dismissing the indictment on May 25, 1993, the district court found:

   That the prosecution was made aware of the violation of the Grand Jury's secrecy proceedings prior to the presentment of all of the evidence and failed to inform the Court, in violation of the Rules of Criminal Procedure 18.03, Subd. 3 (the charge); 18.05, Subd. 1 (verbatim record); 18.06 (admissibility of evidence); and 18.08 (secrecy of the proceedings).

   However, in the memorandum incorporated into its order, the district court stated:

   [W]hen the prosecution was made aware of grand juror 45's contact with the Defendant, she was not questioned further nor reminded of her oath. The prosecution did not instruct her to refrain from discussing the matter with the Grand Jury and did not disqualify her. While this course of inaction may have appeared to have been the appropriate way to handle a seemingly innocent encounter with a suspect at the time, hindsight reveals that it caused much greater irregularities in the Grand Jury proceedings. * * * While the County Attorney did not know that grand juror 45 was talking with the other grand jurors and embellishing her account of her meeting the Defendant, he may have prevented much of the prejudice this caused by taking a more active role earlier on.

On appeal from the district court's May 23, 1993, order, this court affirmed dismissal of the indictment. In so doing, we found dispositive the issue of whether grand juror 45's conduct tainted the grand jury, and chose, therefore, not to address the issue of prosecutorial misconduct. The Minnesota Supreme Court denied review.

When the state subsequently moved for leave to file a new complaint or indictment pursuant to Minn.R.Crim.P. 17.06, subd. 4(3), the district court denied the motion and stated:

> The State did not appeal the second basis for the Court's May 25, 1993 dismissal of the indictment, namely, prosecutorial misconduct as noted in footnote 1 of the unpublished decision of the Court of Appeals.
>
> *    *    *    *    *    *
>
> The trial court's Memorandum and Order dated May 25, 1993, make clear that its ruling was based on (1) prejudicial prosecutorial misconduct and (2) irregularity in the grand jury proceedings. * * * In the Memorandum attached to the Order dismissing the indictment, the Court stated,
>
>> "It is the Court's conclusion that it is compelled under all of the circumstances to grant the Defendant's motion. The irregularities and error enumerated herein were not cured during the time of the Grand Jury proceedings. Going unchecked, they accumulated and undermined the Defendant's right to be free from prejudice and the overall integrity of the proceeding. The cumulative effect of the irregularities prejudiced the substantial rights of Susan Roers and therefore invalidates the indictment...."
>
> *    *    *    *    *    *

The trial court determined that the errors and abuse which occurred during the grand jury proceedings were so prejudicial to Susan Roers and so substantially prejudiced her constitutional rights that the indictment must be dismissed. The tainted grand jury proceedings were curable defects such that a new grand jury could be empaneled. The prosecutorial misconduct in this case was "so prejudicial to a defendant's case" and "so violative of due process and fundamental fairness as to constitute a non-curable defect."

*    *    *    *    *    *

The Court of Appeals in its unpublished decision found that "a grand juror's contact with respondent and subsequent discussions regarding respondent with other grand jurors tainted the grand jury proceedings" and affirmed the dismissal of the indictment by the trial court. Because the state's inaction and prosecutorial misconduct was not briefed and was not raised as an issue for appeal except at oral argument, the Court of Appeals declined to address it.[2]

(citations omitted).

## ISSUE

Is the state barred from seeking respondent's indictment because of prosecutorial misconduct amounting to noncurable defects?

## ANALYSIS

██ On review of a pretrial order, this court must determine whether the district court was clearly erroneous, and whether the error will have a critical impact on the outcome of the trial. *State v. Webber,* 262 N.W.2d 157, 159 (Minn.1977). Dismissing this case for noncurable defects will unquestionably have a critical impact on the outcome since it will prevent reindictment,

---

**2.** At this point in the memorandum, the district court referenced a footnote in this court's opinion affirming dismissal of the indictment. The relevant language in the body of that opinion and the footnote itself read as follows:

[We do not], in affirming the dismissal, make any determination as to the state's ability to reindict the respondent.[1]

  [1] In its memorandum, the district court stated that the state's inaction "is error and it

constitutes a gross violation of the Defendant's substantial constitutional rights." Respondent, at oral argument, claimed that under *State v. Grose,* 396 N.W.2d 874 (Minn.App. 1986), *rev. dismissed* (Minn. Jan. 16, 1987), the state's error is a noncurable defect that permanently bars prosecution of respondent. *Id.* at 877. Because this issue was not raised except by oral argument, we do not address it here.

therefore eliminating the possibility of successful prosecution. *See State v. Hookom,* 474 N.W.2d 624, 628 (Minn.App.1991) (to establish critical impact, the state must show that the trial court's order significantly reduces the likelihood of successful prosecution). This court therefore must determine whether the district court's order was clearly erroneous. The district court's findings are erroneous if, after viewing the record, this court reaches a firm conviction that a mistake has been made. *Id.* (citing *State v. Kvam,* 336 N.W.2d 525, 529 (Minn.1983)).

■ In its order denying the state's motion to file a new complaint or indictment, the district court stated that its 1993 dismissal occurred in part because of noncurable defects, and when the state appealed the dismissal it did not raise the issue of prosecutorial misconduct. The state argues that if it made any errors during the grand jury proceedings, they were all curable and that the district court did not clearly indicate that the dismissal was for noncurable defects.

We first note that the district court, in the order presently on appeal, mischaracterizes the state of the record in the first appeal. The state, in that appeal, clearly raised and fully briefed the issue of prosecutorial misconduct. This court declined to address this issue because we found grand juror 45's misconduct sufficient to affirm dismissal of the indictment.

In its brief in the first appeal, the state argued that it did not err in focusing on the respondent when it presented evidence to the grand jury in: producing evidence about the death of respondent's nephew, using selective evidence against respondent, permitting two off-the-record discussions during grand jury proceedings, and its handling of grand juror 45's conduct. Had we addressed this issue in our earlier opinion, arguably we would have affirmed the district court, given our narrow standard of review. Our inquiry cannot end there, however. The issue of whether the district court abused its discretion in determining such acts to constitute prosecutorial misconduct is distinctly separate from the issues of whether the misconduct was so egregious as to constitute a noncurable defect, and whether the district court clearly put the state on notice that it must raise the issue of noncurability in the first appeal or forever waive it.

We are not convinced that the language in the district court's May 1993 order was so clear as to put the state on notice of the noncurable nature of the defects thus preventing the state from raising the issue of curability now.[3] Considering the serious implications of a dismissal for noncurable defects, we believe that the district court must state directly its intent to dismiss for noncurable defects so as to leave the state with no doubt that further prosecution is barred. Because we do not find the necessary clarity of intent in this case, we conclude that the state did not waive its right to challenge the issue of curability, and we therefore will address the issue on its merits.

■ Whether facts show misconduct so outrageous that it bars prosecution is a question of law that we review de novo, looking at the totality of the circumstances. *United States v. Edenfield,* 995 F.2d 197, 200 (11th Cir.1993). Minnesota case law recognizes that permanent dismissal is an extreme sanction to be applied in the "rare case where a prosecutor abuses the system such that the wrong to the defendant or the system cannot be cured." *State v. Dwire,* 409 N.W.2d 498, 501 (Minn.1987). In *Dwire,* the Minnesota Supreme Court held that an unauthorized person in the grand jury room justified dismissing indictments for theft and diversion of corporate property, but that the defect was curable and the state was permitted to recharge by criminal complaint. *Id.* at 501. In so holding, the court stated that there was no strong policy reason for barring prosecution by complaint after dismissal of an indict-

---

3. We recognize, of course, that the district court in its subsequent order (now on appeal) declared that it, indeed, had intended the dismissal to be for noncurable defects and that its May 23, 1993, order "made it clear that its ruling was based on (1) prejudicial prosecutorial misconduct and (2) irregularity in the grand jury proceedings." The district court's assessment, however, must be distinguished from the notice given to the prosecutors in the order dismissing the indictment.

ment.[4] *Id.*

The supreme court reached a similar result in *State v. Johnson*, 441 N.W.2d 460 (Minn. 1989), where it upheld dismissal of several indictments because of numerous improper prosecutor comments regarding newspaper coverage, errors in the prosecutor's instructions, subversion of the independence of the grand jury, and unauthorized contact between the grand jury foreperson and a former foreperson. *Id.* at 463–66. Although the court recognized that the errors created a cumulative effect that undermined the integrity and independence of the grand jury, its remedy was not permanent dismissal, but an order for representment to a new grand jury. *Id.* at 466.

Respondent and the district court rely on this court's decision in *State v. Grose*, 396 N.W.2d 874 (Minn.App.1986) (*Grose II* ), to support permanent dismissal of this case. In *Grose II*, we affirmed permanent dismissal of an indictment for aiding and abetting perjury. The prosecutor's conduct justifying permanent dismissal included some nineteen violations, among which were improper comments on respondent's Fifth Amendment rights, improper comments on respondent's refusal to waive the statute of limitations, reference to possible punishment, misstatement of the law of scienter, no evidence taken on the last allegation before the vote to indict, improper instructions that the indictment could be based on actions beyond the statute of limitations, insufficient indictments, and an inadequate showing that twelve jurors concurred in the indictments. *State v. Grose*, 387 N.W.2d 182, 185 (Minn. App.1986) (*Grose I* ). While, arguably, these errors might have been cured by presenting the case to another grand jury, it was the *Grose* prosecutor's intentional and continuous egregious conduct manifesting a bad faith pursuit of a perjury indictment that required imposing the strongest possible remedy.

This case, in contrast, involves both a much more serious charge and, we believe, much less egregious prosecutorial conduct. The errors the state committed here affect the grand jury's view of the facts of this case, but do not affect respondent's ability to receive a fair trial, and thus could be cured by convening a new grand jury. Furthermore, the state's conduct in this case does not show the same intent to violate respondent's rights as did the prosecutor's conduct in *Grose*.

**(1) Improper focus on the respondent.**

█ The district court found that the state improperly tailored its evidence to direct suspicion on respondent by announcing to the grand jury that there were three suspects— respondent and Ryan Ford's parents, James and Jennifer Ford—but then presenting evidence implicating only respondent. While the record reveals that there was some evidence regarding the Fords, most of the testimony did concern respondent. If this was unfair to respondent (and we believe any unfairness would have arisen more from the prosecutors' initial remarks that there were three possible suspects than from the prosecutors' later concentration on respondent alone), the state certainly could correct the error if it presents the case to a new grand jury.

**(2) References to the death of respondent's nephew.**

█ The district court found that the state allowed into evidence numerous references to the death of respondent's nephew, which occurred a few weeks before Ryan Ford's death. The state contended that this evidence was relevant to respondent's emotional condition and that it should be admissible because the state indicated to the grand jury that respondent was not involved in her nephew's death.

The Minnesota Rules of Evidence permit relevant evidence to be excluded

> if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Minn.R.Evid. 403. The advisory committee's note to the federal rules of evidence states

---

4. We recognize that, although the indictment of respondent in this case was for first degree mur-

der, prosecution by complaint cannot be had for charges greater than second degree murder.

that "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403 cmt.

In this case, the subject of respondent's nephew arose eleven times through the state's questions, witness testimony, and grand jury questions. Three times the state mentioned that there was no connection between respondent and her nephew's death. The district court believed that these three cautionary statements to the grand jury were not sufficient to overcome the prejudice to respondent resulting from the number of times the issue arose. While we do not find that the district court abused its discretion in determining this to be the case, we disagree that this error could not be cured in a new grand jury proceeding.

**(3) The test to determine whether a person of respondent's size could injure Ryan Ford.**

▉ The district court found that two kinds of evidence improperly focused guilt on respondent: a hair that a BCA forensic scientist found on the living room air conditioner, which the investigator did not determine matched Ryan's, and the videotaped test investigators used to determine whether a person of respondent's stature, but not the stature of either of the Fords, could lift and swing Ryan Ford hard enough to inflict the injury that killed him. We find no error in the district court's findings regarding the hair, since it was found in the living room and other evidence indicated that Ryan suffered his injury in the bedroom. This evidence easily could be excluded in another grand jury proceeding, and thus the error does not prejudice the respondent.

With regard to the videotaped test, we also find no error in the district court's determination that the evidence focused impermissibly on respondent after the state's initial claim that she was not the only suspect. We also conclude, however, that the state could cure this defect in presenting the case to a new grand jury.

**(4) The state's whispered discussion with a witness while searching for a photograph and the appearance of a deputy responding to the emergency alarm.**

▉ At two points during the grand jury hearing, the reporter went off the record: once when a Deputy Sheriff entered the room in response to an emergency alarm accidently activated by one of the prosecutors, and once while the prosecutor and a BCA investigator, who was testifying, whispered together while searching for a photograph.

The Minnesota Rules of Criminal Procedure require a verbatim record of all evidence taken before the grand jury and of all statements and events made before the grand jury except during deliberations and voting. Minn.R.Crim.P. 18.05, subd. 1. In *Dwire,* the Minnesota Supreme Court affirmed that the presence of an unauthorized person in the grand jury room taints an indictment, and no showing of prejudice is required to dismiss the indictment. *Dwire,* 409 N.W.2d at 501. *Dwire,* however, also held that this situation did not constitute a noncurable defect. *Id.* We conclude that while respondent's indictment may have been tainted by the two off-the-record conversations, the error is curable.

**(5) Taped conversation between Ryan Ford's mother and respondent.**

▉ The district court found that permitting evidence of a taped conversation between Jennifer Ford and respondent to reach the grand jury further prejudiced respondent by focusing attention on her. Although respondent had retained counsel at the time of her conversation with Jennifer Ford, she had not been charged with any crime and so had no Sixth Amendment right to have counsel present. *State v. Ronnebaum,* 449 N.W.2d 722, 724 (Minn.1990). Nor was this a custodial interrogation triggering respondent's Fifth Amendment right to counsel. *Id.* While Ford was operating at the behest of the investigators, making her an agent of law enforcement officers, respondent was not in custody. The conversation occurred at the Mall of America, where respondent worked, and respondent was free to leave.

Respondent claims that the prosecutor violated Minnesota Rule of Professional Conduct 4.2 "by using an agent, Jennifer Ford, to communicate about the subject of the representation with the party, Ms. Roers, whom the prosecution knew to be represented by counsel." Rule 4.2 states:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Minn.R.Prof.Conduct 4.2. The comment to the rule states that it "also covers any person, whether or not a party to a formal proceeding, who is represented by counsel concerning the matter in question." Minn.R.Prof.Conduct 4.2 cmt. The rule thus applies to this case and precludes the situation that occurred here.

The Eighth Circuit, however, has found no ethical violation in a similar case. In *United States v. Dobbs,* 711 F.2d 84 (8th Cir.1983), the government failed to obtain consent from appellant's counsel before it interviewed appellant. *Id.* at 86. The court conceded that while there may be circumstances where the prosecutor's conduct in such a situation may implicate ethical concerns, it did not find one in Dobbs's noncustodial interview. *Id.*

Thus, even assuming that the tape in this case may have inappropriately focussed the grand jury's attention upon respondent to the exclusion of any other suspects, we conclude that the state could cure this error by presenting its case to another grand jury.

**(6) The state's conduct with respect to grand juror 45.**

■ In the first appeal in this case, we agreed with the district court that grand juror 45's conduct justified dismissing the indictment. We remain in agreement. We must now decide whether the circumstances surrounding grand juror 45's conduct necessitate a permanent bar to reprosecution. An examination of grand juror 45's conduct leads us to conclude that a new grand jury would not carry any taint traceable to that conduct, and respondent would not be prejudiced by

the convening of a second grand jury. Our inquiry, however, cannot end with this observation. The district court found the actions of the prosecutors so egregious as to warrant permanent dismissal. The concern of the district court is not a baseless one. To the extent that the prosecutors might have been aware of grand juror 45's inappropriate conduct and of her communication with other grand jurors and did not move swiftly and effectively to employ curative measures, we too are concerned and condemn such lack of response.

■ The difficult question we must answer is whether permanent dismissal is an appropriate judicial response to the prosecutorial conduct in this case. We conclude it is not. We conclude also that certain of the prosecutors' conduct found objectionable by the district court could as appropriately be traced to poor judgment as to deliberate or grossly negligent conduct designed to violate respondent's constitutional rights. The prosecutors' explanation that they informed the grand jury initially that there were three possible suspects in order not to inject the prosecutors' personal opinions into the case is not totally incredible. *See Johnson,* 441 N.W.2d at 466. In addition, certain other prosecutorial conduct found objectionable by the district court (inquiry into possible inconsistencies in respondent's statements to the police) was evoked in response to a question by a grand juror and was not initiated by the prosecutors on their own volition.

Ultimately, the critique and sanction delivered by the district court, and the scrutiny and concern exercised and expressed by this court will, we believe, strengthen the resolve of the prosecutors to assure that the errors of the past are not repeated in the future. Finally, invoking the extremely serious remedy of permanent dismissal in order to punish the prosecutors for any single error or for the cumulative effect of several errors is not, we believe, warranted in this case. *See United States v. Lawson,* 502 F.Supp. 158, 173 (D.Md.1980).

■ Our decision today follows the federal courts' view that "the better view is to allow reindictment upon dismissal if the new

grand jury would not be affected by the prior government improprieties." *Id.* at 172. Where governmental misconduct or gross negligence in prosecuting a case has not actually prejudiced the defendant, a defendant is not entitled to permanent immunity respecting alleged criminal conduct. *United States v. Fulmer,* 722 F.2d 1192, 1196 (5th Cir.1983). In *Fulmer,* the defendant moved to dismiss the charges against him, claiming that the government engaged in outrageous conduct during the investigation leading to his arrest, improperly used the grand jury to bolster its case against him, and added new counts to each of three indictments to punish him for exercising his pretrial rights. *Id.* at 1193. The defendant also alleged that the state was vindictive in its prosecution. The district court dismissed the indictment with prejudice based on the cumulative effect of "governmental blunders and errors." *Id.* at 1194–95. The court of appeals, however, stated that "mere error or oversight is neither gross negligence nor intentional misconduct," *id.* at 1195 (quoting *United States v. Westoff,* 653 F.2d 1047, 1050 (5th Cir.1981)), and concluded that the government's ineptitude was not so grossly negligent as would bar prosecution. *Id.*

In *Lawson,* the defendants moved to dismiss the indictment based on the government's alleged affirmative attempt to discredit a witness and to turn exculpatory evidence into inculpatory evidence. *Lawson,* 502 F.Supp. at 162. In discussing dismissing the indictment as a means to deter government misconduct, the court quoted *United States v. Fields,* 592 F.2d 638, 648 (2d Cir. 1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979):

> [P]roper regard for the public interest in the prosecution of crimes counsels restraint in dismissing an indictment for deterrence purposes unless the course of official misconduct is a demonstrated, longstanding one. We have approved this extreme sanction only when the pattern of misconduct is widespread or continuous.

*Id.* at 169. While the *Lawson* court concluded that the prosecutor's conduct was particularly egregious and dismissed the indictment, it also determined that the dismissal must be

"without prejudice." *Id.* at 172. The court stated:

> Although defendants do have a constitutional right to an informed and unbiased grand jury, they have no concomitant right to bar forever investigation into their alleged criminal conduct.

*Id.*

We conclude in this case that the state is not barred from proceeding by reindictment or by complaint. This conclusion, we believe, is consistent with a proper regard for the public interest in the prosecution of crimes as observed in *Lawson.* It is also consistent, we believe, with the public policy of Minnesota as expressed in *Johnson* and *Dwire.* Finally, and importantly, we believe that respondent's constitutional right to an informed and unbiased jury and to a fair trial can be protected while still permitting the state to resubmit this matter to a second grand jury or to issue a complaint.

### DECISION

Although the district court did not err in dismissing the indictment for prosecutorial errors, it did err in denying the state's motion for leave to reindict.

**Reversed.**