[855 NYS2d 522]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID
MARTINEZ, Appellant.

First Department, April 17, 2008

**APPEARANCES OF COUNSEL**

*Richard M. Greenberg, Office of the Appellate Defender,* New York City (*Mugambi Jouet* and *Rosemary Herbert* of counsel), for appellant.

*Robert M. Morgenthau, District Attorney,* New York City (*Eric Rosen, Richard Nahas* and *Julie Paltrowitz* of counsel), for respondent.

**OPINION OF THE COURT**

ACOSTA, J.

The issue in this case of first impression is whether an indictment that identifies a defendant solely by his or her DNA markers satisfies the defendant's constitutional right to notice. We hold that it does.

On October 31, 1996, the complainant, a 20-year-old female, was sexually assaulted at gunpoint in the Lafayette/Canal Street subway station. The assailant held a gun to the complainant, took her money and stated that "this is what happens to women who take the train alone at night." He then forced the complainant to take her pants down, touched her breast, and tried to force his penis into her vagina. Unsuccessful in this attempt, he put his penis in her hand and ejaculated. Two other persons allegedly served as lookouts for the assailant, but were not apprehended. The complainant was treated for her injuries at the hospital and a semen sample was collected and preserved.

The immediate investigation by the police produced no suspects. Then in March 2000, the DNA sample from the assault was submitted to a multi-jurisdiction DNA databank and again no match was made. Nevertheless, a New York County grand jury was presented with the DNA sample with a particularized DNA profile from the assailant, and in 2001, the grand jury charged "John Doe" with attempted rape in the first degree, three counts of sexual abuse in the first degree, and two counts of robbery in the first degree.

In July of 2004, years after the "John Doe" indictment was issued, defendant completed a New Jersey sentence for a 1999 drug conviction. He was returned to New York as a parole violator for a 1985 robbery conviction. The police took defendant's

DNA and entered his profile into the DNA databank. On October 12, 2004, a "cold hit" in the system revealed that defendant's DNA profile matched the profile in the 2001 "John Doe" indictment. Defendant was arrested and produced for arraignment. Shortly thereafter, the indictment was orally amended to name defendant as the accused. As noted by the People, there is no record that defendant ever objected to this amendment, and he does not claim on appeal that he did so.

On December 16, 2004, defendant moved to dismiss the indictment with prejudice, arguing that the "John Doe" designation accompanied by the DNA profile was defective inasmuch as it did not "name a person" and did not "adequately describe" him. Defendant also contended that he was given "inadequate notice" that he was accused of a crime because he did not know his own DNA profile. He further alleged that he had been denied his constitutional right to a speedy trial and that the statute of limitations had lapsed.

The People argued in response that the indictment properly named and described defendant by referring to his DNA profile, and that a DNA profile is a far more certain description than a name or a list of physical attributes. In any event, the People asserted, defendant was not entitled to notice of the charges against him prior to arraignment because he had been indicted before arrest.

By order dated January 26, 2005, Supreme Court denied defendant's motion to dismiss, finding that the indictment tolled the statute of limitations as the People were unable to locate him despite the exercise of due diligence. The court did not address defendant's claims presented on this appeal. Defendant subsequently pleaded guilty to attempted rape in the first degree.

■ On appeal, defendant asserts that because the indictment identified him solely by his DNA profile, which only a technically trained person could decipher, it deprived him of his right to be notified that he was the person accused. By pleading guilty, however, defendant waived this claim, which is technical rather than jurisdictional (*see People v Hansen*, 95 NY2d 227, 230-231 [2000]). While the right to challenge an insufficient accusatory instrument survives a guilty plea, it can only be challenged insofar as it fails to accuse the defendant of acts constituting a crime, or fails to allege every element of the offense charged and that the defendant committed it (*People v Konieczny*, 2 NY3d 569, 575 [2004]).

Here, the indictment alleged every element of attempted rape in the first degree, three counts of sexual abuse in the first degree, and two counts of robbery in the first degree, and that defendant committed those crimes. That the indictment did not refer to defendant by name is of no moment inasmuch as it identified him by his unique DNA markers.

Nothing more was required until defendant was arraigned and the indictment was properly amended without objection. That is, the amendment did "not change the theory or theories of the prosecution as reflected in the evidence before the grand jury which filed such indictment, or otherwise tend to prejudice the defendant on the merits" (CPL 200.70 [1]; *Tirado v Senkowski*, 367 F Supp 2d 477, 491 [WD NY 2005] ["The prosecution was entitled to amend the indictment to specify Tirado's proper name since the amendment conformed to the proof before the grand jury and did not prejudice the defendant"]; *cf. People v Ganett*, 68 AD2d 81, 84 [1979], *affd* 51 NY2d 991 [1980] [where defendant is indicted under a fictitious name because his true name is unknown or where some person other than the intended defendant is accused in the indictment, the indictment may be amended upon discovery of the true name of the person the grand jury intended to indict]). In fact, the amendment was a technical substitution of defendant's name for his DNA profile, reasonably done once his DNA had been matched to the sample in the databank.

In any event, by his guilty plea, defendant also waived his challenge to the amendment of the indictment since that claim raises no jurisdictional defect (*People v Thompson*, 287 AD2d 794, 796 [2001], *lv denied* 97 NY2d 688 [2001]).

■ We also reject defendant's claims on the merits. The right to notice that a defendant is entitled to by indictment is the right to "fair notice of the accusations made against him, so that he will be able to prepare a defense" (*People v Iannone*, 45 NY2d 589, 594 [1978]). This function of the indictment is founded on the notice requirement of article I (§ 6) of our State Constitution as well as the 6th Amendment to the Federal Constitution. To satisfy this notice requirement, the indictment must allege all the legally material elements of the charged crime and state that defendant in fact committed the acts which comprise the elements. The "basic essential function of an indictment qua document is simply to notify the defendant of the crime of which he stands indicted" (*People v Iannone* at 598).

Defendant's right to notice of the charges attached at his arraignment (*see* CPL 210.15 [1]), at which time the indictment was unsealed (*see* CPL 210.10 [3]). At the arraignment, defendant was informed of the charges against him and given a copy of the indictment. Defendant was thus necessarily placed on notice that he was the individual charged in the indictment. Nothing in CPL 200.50 requires that an individual charged in an indictment be referred to in any particular manner, and we conclude that a "John Doe" indictment accompanied by a specific DNA profile is sufficient to give a defendant notice of the charges against him.

Indeed, given the advances in science, the practice of indicting by DNA is starting to take a foothold in this country's criminal justice system (*see* Scott Akehurst-Moore, *An Appropriate Balance?—A Survey and Critique of State and Federal DNA Indictment and Tolling Statutes*, 6 J High Tech L 213 [2006]). Some states have employed nonstatutory DNA indictments, but in addition to the federal legislation (18 USC § 3282) there are four states utilizing statutory DNA indictments. The nonstatutory states include Wisconsin (*see State v Dabney*, 264 Wis 2d 843, 854, 663 NW2d 366, 372 [Ct App 2003], *review denied* 266 Wis 2d 63, 671 NW2d 850 [2003]) and Massachusetts (*see* Suzanne Smalley, *Newest Suspect in Rapes: The DNA 'John Doe' Indicted to Keep Cases Open,* Boston Globe, June 20, 2004, at A1 [noting use of DNA indictment after legislature failed to abolish statute of limitations for rape]). Examples of legislative implementation of DNA indictments include Arkansas Code Annotated § 5-1-109 (b) (1) (B) and (i)-(j); Delaware Code Annotated, tit 11, § 3107 (a); Michigan Compiled Laws § 767.24 (2) (b); New Hampshire Revised Statutes Annotated § 592-A:7 (II); and 18 USC § 3282). States in which a genetic material has been indicted (*see* Moyer and Anway, *Biotechnology and the Bar: A Response to the Growing Divide Between Science and the Legal Environment*, 22 Berkeley Tech LJ 671, 688 [2007]) include California, Texas, Wisconsin, North Dakota, Pennsylvania, Oklahoma, New York, Utah, Missouri and Kansas (*id.* at 689 n 95).

Aside from the right to notice, no other constitutional rights were implicated here. Clearly, the right to indictment by a grand jury, guaranteed by section 6 of article I of our State Constitution, was not violated. Furthermore, the indictment qua document served all of the traditional functions. That is, it provided fair notice of the accusations, ensured that "the crime for which

the defendant is brought to trial is in fact one for which he was indicted by the Grand Jury, rather than some alternative seized upon by the prosecution in light of subsequently discovered evidence," and served as a means of avoiding double jeopardy claims (*Iannone*, 45 NY2d at 594, 595). Had defendant gone to trial, his constitutional right of confrontation would have permitted him to examine the lab technician who had compared the DNA samples and otherwise attempt to dispute the findings (*People v Rawlins*, 10 NY3d 136 [2008]).

Absent a constitutional or statutory prohibition, a DNA indictment is an appropriate method to prosecute perpetrators of some of the most heinous criminal acts. Indeed, the prevalence of DNA databanks today as a criminal justice tool supports the conclusion that a defendant can be properly identified by a DNA profile, especially in light of the accuracy of this identification. The chance that a positive DNA match does not belong to the same person may be less than one in 500 million (*see* Moyer and Anway, *supra*, 22 Berkeley Tech LJ at 684 n 64). Therefore, in the instant case, given the nature of the crime, the notice of the charges received by defendant was "reasonable under all the circumstances" (*People v Palmer*, 7 AD3d 472, 472 [2004], *lv denied* 3 NY3d 710 [2004]).

To be sure, any question or uncertainty about the identity of the accused in the instant case was answered when he was arraigned for the crimes charged in the indictment. Additionally, he was further notified that he was the accused upon the amendment of the indictment. Such notice allowed him to prepare a defense and to be made aware of the specific crimes charged by the grand jury, thereby satisfying the purposes of an indictment (*Iannone*, 45 NY2d at 594).

To accept defendant's broadside attack on indictment by DNA would lead to anomalous results. Contrary to defendant's arguments, his constitutionally grounded right to fair notice of the crime of which he is accused is not dependent on the subjective capacity of defendant to understand it. Just as defendant is not required to be literate for a written indictment to be valid, he is not required to be a geneticist to be subject to indictment by DNA profile.

Moreover, we are fully aware that DNA indictments will pose problems in certain cases. As Frank B. Ulmer points out in *Using DNA Profiles to Obtain "John Doe" Arrest Warrants and Indictments* (58 Wash & Lee L Rev 1585, 1617-1618 [Fall 2001]), "when there is a significant passage of time between indictment

and commencement of trial, there is always the possibility that someone simply will misplace or mislabel the evidence, thereby depriving the defendant of an opportunity to perform his own DNA profiling analysis on the evidence collected from the crime scene." Ulmer goes on to note (at 1618) that

> "perhaps more importantly in sexual assault cases, the crime scene sample from which the suspect's DNA is extracted is often so small that, after the initial prosecution tests, further testing is no longer possible because the prosecution consumes the entire sample. This alone would severely hamper a defendant's ability to rebut the prosecution's identification evidence. In such a situation, the defendant would be faced with DNA identification evidence, tested many years in the past, that the prosecution claims is conclusive proof of the fact that the defendant, at the very least, was at the crime scene. Yet, the defendant is deprived of the ability to confirm or to challenge the prosecution's tests."

But these problems can be dealt with on a case by case basis (*see People v Vernace*, 96 NY2d 886, 887 [2001] ["Courts must engage in a sensitive weighing process of the diversified factors in the particular case," including whether the "defense has been impaired by reason of the delay"]; *People v Singer*, 44 NY2d 241, 253 [1978] ["the State due process requirement of a prompt prosecution is broader than the right to a speedy trial guaranteed by statute . . . and the Sixth Amendment"]).*

---

* Of course, indicting by DNA to circumvent the statute of limitations may *raise issues* regarding some of the policy considerations that CPL 30.10 was designed to protect (*see e.g.* Ulmer, 58 Wash & Lee L Rev at 1612-1621; Meredith A. Bieber, Comment, *Meeting the Statute or Beating It: Using "John Doe" Indictments Based on DNA to Meet the Statute of Limitations*, 150 U Pa L Rev 1079, 1086 [2002]). These policy considerations include the difficulty in having to defend against a charge when basic facts may have become obscured by the passage of time, the amelioration of the fear of punishment for acts committed in the far-distant past, and the encouragement of prompt investigation of suspected criminal activity (*People v Seda*, 93 NY2d 307, 311 [1999], citing *Toussie v United States*, 397 US 112, 114-115 [1970]).

Statutes of limitations are not constitutionally mandated, however, and have been legislatively amended to further an important state goal. Thus, for instance, in enacting CPL 30.10 (4) (a) (ii), which provides for a five-year tolling of the limitations period during which the defendant's whereabouts remain unknown and unascertainable through the exercise of reasonable diligence, our legislature "carefully balanced the general policy in favor of avoiding prosecution of stale cases against the countervailing policy of ensuring that law

Finally, defendant failed to preserve his challenge to the procedure under which he was adjudicated a persistent violent felony offender, and we decline to review it in the interest of justice. As an alternative holding, we find it without merit (*see Almendarez-Torres v United States*, 523 US 224 [1998]).

Accordingly, the judgment of Supreme Court, New York County (Bonnie G. Wittner, J.), rendered February 15, 2006, convicting defendant, upon his plea of guilty, of attempted rape in the first degree, and sentencing him, as a persistent violent felony offender, to a term of 16 years to life, should be affirmed.

ANDRIAS, J.P., NARDELLI, WILLIAMS and McGUIRE, JJ., concur.

Judgment, Supreme Court, New York County, rendered February 15, 2006, affirmed.

---

enforcement officers have sufficient time to bring suspected criminals to justice" (*Seda*, 93 NY2d at 311). It did so by placing a five-year limitation on the tolling exception as well as imposing a "reasonable diligence" requirement to serve as "a deterrent to delaying an investigation" (*id.* at 312). It also bears mentioning that as for postcommencement delays involved with DNA indictments, they may be dealt with by constitutional and statutory speedy trial requirements (*see* US Const 6th Amend; CPL 30.20, 30.30).