STATE of Minnesota, Respondent,

v.

**Derek Allen CARLSON, Appellant.**

No. A13–0416.

Court of Appeals of Minnesota.

April 7, 2014.

Lori Swanson, Attorney General, St. Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, and Tara Reese Duginske, Special Assistant State Public Defender, St. Paul, MN, for appellant.

Considered and decided by WORKE, Presiding Judge; LARKIN, Judge; and KIRK, Judge.

## OPINION

KIRK, Judge.

In a case of first impression, appellant Derek Allen Carlson challenges his conviction of felony second-degree burglary, arguing that the complaint warrant that identified him by his unique DNA profile failed to describe him with reasonable certainty, and respondent State of Minnesota should have been barred from prosecuting him after the three-year statute of limitations had expired. We conclude that the complaint satisfied the constitutional and rule requirements under the warrant clause of the Fourth Amendment and Minn. R.Crim. P. 3.02, subd. 1. Thus, the complaint was sufficient to commence the prosecution under the applicable statute of limitations. We affirm.

## FACTS

The facts of this case are undisputed. On July 15, 2006, police officers responded to a reported residential burglary in St. Louis Park. A window pane on the front door was smashed and several items were missing from the residence, including a laptop, checkbooks, a digital camera, and the homeowners' 2006 Dodge Charger vehicle. The police surmised that the suspect cut himself during the break-in because several drops of blood were found throughout the residence. The Hennepin

County Sherriff's Office Crime Lab (HCSCL) collected samples of the blood for forensic analysis.

The next day, police officers located the 2006 Dodge Charger in Minnetonka, and recovered some of the stolen property from the residence inside the vehicle. The police also discovered an energy drink can in the vehicle and submitted it to HCSCL for forensic testing. On June 14, 2007, forensic scientists matched the DNA from the blood found in the residence to the DNA found on the energy drink can. From this evidence, forensic scientists identified an unidentified DNA profile comprised of 15 different loci, which would occur in one in 10,450,000,000,000,000,000 unrelated individuals.

On June 15, 2009, one month before the statute of limitations imposed for the crime of burglary expired, the state filed a probable cause complaint charging the suspect with one count of felony second-degree burglary. The complaint identified the suspect as "John Doe," an unknown male, and described him by his 15-loci DNA profile. On February 8, 2010, the Minnesota Bureau of Criminal Apprehension sent a letter to HCSCL stating that the DNA profile generated from the crime scenes matched the DNA from appellant, who was on probation.

On March 17, 2010, HCSCL notified the St. Louis Park Police Department that appellant's DNA profile linked him to the July 2006 burglary. A St. Louis Park police officer interviewed appellant on June 30. Appellant voluntarily spoke with the officer without a lawyer present. When the officer confronted appellant with the fact that his DNA was found at the scene of the burglary, appellant repeatedly asked how long ago the burglary occurred and denied any involvement. Appellant admitted that around the time of the burglary his memory was totally impaired due to excessive drinking and drugs, but he recalled discovering items in his apartment that did not belong to him. Appellant stated that he had enemies at that time who may have placed his blood at the residence to implicate him in the burglary.

On August 19, 2010, police secured a search warrant and obtained a DNA sample from appellant, which matched the DNA found at the crime scenes. Seventeen months later, on January 26, 2012, the state filed an amended complaint substituting appellant's name and birth date for "John Doe."

On May 4, 2012, appellant moved to dismiss the amended complaint because the description of the DNA profile in the original complaint did not identify him with reasonable certainty and because the state failed to charge him within the three-year statute of limitations for burglary. The district court denied appellant's motion, noting that if the complaint must state the exact name of the defendant at the time of initial charging, the second clause of Minn. R.Crim. P. 3.02, subd. 1, requiring an unknown defendant to be described by "any name or description by which the defendant can be identified with reasonable certainty," would lack any meaning. The district court reasoned that when the state attached the DNA profile to "John Doe" in the title of the complaint, "that was as much particularity as the [s]tate could accomplish at the time of charging." The district court noted on the record that it found support in its analysis in three cases from other jurisdictions: *State v. Dabney*, 264 Wis.2d 843, 663 N.W.2d 366 (Wis.Ct.App.2003); *People v. Martinez*, 52 A.D.3d 68, 855 N.Y.S.2d 522 (N.Y.App.Div.2008); and *People v. Robin-*

*son,* 47 Cal.4th 1104, 104 Cal.Rptr.3d 727, 224 P.3d 55 (2010).

On October 2, 2012, appellant waived his right to a jury trial and agreed to proceed with a stipulated-facts trial in order to preserve appellate review of the pretrial ruling under Minn. R.Crim. P. 26.01, subd. 4. On October 8, 2012, the district court found appellant guilty of felony second-degree burglary. The district court stayed imposition of appellant's sentence for three years and placed him on probation.

### ISSUES

1. Does the complaint warrant identifying "John Doe" and his DNA profile as the defendant describe him with reasonable certainty under the Fourth Amendment of the United States Constitution and under Minn. R.Crim. P. 3.02, subd. 1?

2. Does the complaint warrant identifying "John Doe" and his DNA profile as the defendant satisfy the statute of limitations on the crime charged?

### ANALYSIS

**I. The complaint warrant identifying "John Doe" with a DNA profile describes appellant with reasonable certainty under the Fourth Amendment of the United States Constitution and Minn. R.Crim. P. 3.02, subd. 1.**

Constitutional challenges are questions of law, which this court reviews de novo. *State v. Bussmann,* 741 N.W.2d 79, 82 (Minn.2007). Under the Fourth Amendment to the United States Constitu-

tion "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment protects individuals from general warrants that fail to establish a sufficient nexus between the criminal activity, the place of the activity, and the persons in the place to show probable cause. *State v. Robinson,* 371 N.W.2d 624, 625 (Minn.App.1985). The Minnesota Constitution prohibits unlawful searches and seizure using almost identical language. Minn. Const. art. 1, § 10. Minn. R.Crim. P. 3.02, subd. 1, codifies the federal and state constitutional standard for Minnesota arrest warrants, stating a complaint warrant "must contain the name of the defendant, or, if unknown, any name or description by which the defendant can be identified with reasonable certainty."

This court reviews the interpretation of procedural rules de novo. *State v. Martinez–Mendoza,* 804 N.W.2d 1, 6 (Minn. 2011). The question of whether a John Doe DNA complaint satisfies the particularity and reasonable certainty requirements of the Fourth Amendment and Minn. R.Crim. P. 3.02, subd. 1, is a matter of first impression. Appellant argues that a DNA profile, much like a fingerprint, may help to identify a suspect, but it fails to describe an individual with reasonable certainty.

Since 2003, at least eight state appellate courts have considered whether a John Doe DNA complaint satisfies the particularity requirements of the warrant clause of the Fourth Amendment.[1] All of the cases involved serious sexual assaults

---

1. These states are Wisconsin, Ohio, New York, Kansas, California, Tennessee, Massa- chusetts, and Utah.

where a John Doe DNA complaint was filed within the applicable statute of limitations. The complaint warrants were later amended to include the defendant's actual name after the statute of limitations for the offense had expired. Most of the courts concluded that when the DNA profile of a suspect is the best description available, a John Doe DNA complaint warrant is sufficient to commence a criminal action. *See Robinson,* 104 Cal.Rptr.3d 727, 224 P.3d at 80; *Commonwealth v. Dixon,* 458 Mass. 446, 938 N.E.2d 878, 885 (2010); *Martinez,* 855 N.Y.S.2d at 526; *State v. Danley,* 138 Ohio Misc.2d 1, 853 N.E.2d 1224, 1227–28 (Ohio Ct.C.P.2006); *State v. Burdick,* 395 S.W.3d 120, 130 (Tenn.2012); *State v. Younge,* 321 P.3d 1127, 1132, 2013 WL 6153712, at *3 (Utah Nov. 22, 2013); *Dabney,* 663 N.W.2d at 372. *State v. Belt* is the only case where a John Doe DNA arrest warrant was determined to be insufficient to prosecute the defendant. 285 Kan. 949, 179 P.3d 443, 450–51 (2008). The Kansas Supreme Court concluded that several John Doe DNA arrest warrants were insufficient to identify the defendant because they listed only two DNA loci that are commonly found in one out of every 500 persons. *Id.* at 446–47, 450. But the court agreed, "in the abstract," that an arrest warrant coupled with a description of the person's unique DNA profile "can satisfy constitutional and statutory particularity requirements." *Id.* at 450.

The Wisconsin Court of Appeals was the first court to tackle this issue in *Dabney,* 663 N.W.2d at 366. In *Dabney,* the state charged "John Doe" with kidnapping and four counts of first-degree sexual assault and identified him in the warrant by the unique DNA profile obtained from evidence recovered from the victim. *Id.* at 369. Wisconsin's warrant requirement, much like Minnesota's, requires that an arrest warrant "[s]tate the name of the person to be arrested, if known, or if not known, designate the person to be arrested by any description by which the person to be arrested can be identified with reasonable certainty." *Id.* at 371 (quoting Wis. Stat. § 968.04(3)(a)4 (2001–02)) (quotation marks omitted).

For the purpose of identifying a particular person, the court recognized that DNA is "arguably the most discrete, exclusive means of personal identification possible" because "a genetic code describes a person with far greater precision than a physical description or a name." *Id.* at 372 (quotation omitted). The court agreed with the state that the DNA profile satisfied the "reasonable certainty" requirement for an arrest warrant and answered the "who is charged" question for a complaint. *Id.*

A growing consensus has developed around the central holding of *Dabney* that a DNA profile meets both the particularity requirements of the Fourth Amendment and the states' "reasonably certain" statutory requirements because of its ability to describe a person with much greater accuracy than a person's name or physical description. *See Burdick,* 395 S.W.3d at 128; *Robinson,* 104 Cal.Rptr.3d 727, 224 P.3d at 74; *Danley,* 853 N.E.2d at 1227. In *Dixon,* the Massachusetts Supreme Judicial Court noted that a DNA profile is "metaphorically, an indelible 'bar code' that labels an individual's identity with nearly irrefutable precision." 938 N.E.2d at 885.

We are persuaded that a DNA profile meets and even exceeds the particularity requirements of the Fourth Amendment as well as the "reasonable certainty" requirement of Minn. R.Crim. P. 3.02, subd. 1, by adequately describing a defendant whose

name is unknown. While indiscriminate searches and seizures authorized by general warrants are unlawful, Minnesota courts recognize that a complaint is "to be treated in a commonsense rather than overtechnical manner on review." *State v. Burch*, 284 Minn. 300, 308, 170 N.W.2d 543, 549 (1969); *see also State v. Dunson*, 770 N.W.2d 546, 553 (Minn.App.2009) (noting that "the public policy of this state is to free criminal pleading from the pitfalls that resulted from the formalities and technicalities of common-law pleading" (quotation omitted)), *review denied* (Minn. Oct. 20, 2009).

In Minnesota, a summons or warrant shall be issued if there are sufficient facts in a complaint and supporting affidavits or testimony to show that there is "probable cause to believe an offense has been committed and the defendant committed it." Minn. R.Crim. P. 3.01. Minnesota law does not require that the defendant's name appear on the complaint. *See* Minn.Stat. § 628.13 (2012); Minn. R.Crim. P. 3.02, subd. 1; *Evans v. State*, 788 N.W.2d 38, 46 (Minn.2010). Here, the complaint alleged that "John Doe" committed all of the elements of second-degree burglary, and appellant was identified by his unique DNA profile. We conclude that the state properly and timely commenced the criminal action against appellant when it filed a John Doe complaint identifying him by his unique 15 loci DNA profile on June 15, 2009.

Appellant argues that this court should not follow *Dabney* and its progeny because these cases found a John Doe DNA complaint to be an appropriate method to prosecute perpetrators of sexual offenses, which are "heinous criminal acts." *See Martinez*, 855 N.Y.S.2d at 526. However, Minn. R.Crim. P. 3.02, subd. 1, applies uniformly to all complaints for probable cause, irrespective of the nature of the crime.

Finally, appellant's concern that individuals are not physically recognizable based on their DNA profile does not defeat the state's argument. *See West v. Cabell*, 153 U.S. 78, 85–88, 14 S.Ct. 752, 753–54, 38 L.Ed. 643 (1894) (holding an arrest warrant that incorrectly named the arrestee was invalid, and "a warrant for the arrest of a person charged with crime must truly name him, or describe him sufficiently to identify him"). Regardless of how specifically a complaint warrant describes the defendant, police officers routinely have to obtain additional information before executing an arrest warrant. "[E]xtrinsic information is commonly needed to execute [the warrant]. If a name is given, information to link the name to the physical person must be acquired.... [A]n arrest warrant based on a DNA profile can be readily and accurately executed." *Dabney*, 663 N.W.2d at 372.

## II. The complaint warrant identifying a John Doe and his DNA profile as the defendant satisfies the statute of limitations on the crime charged.

■ "We review de novo the construction and application of a statute of limitations, including the law governing the accrual of a cause of action." *Sipe v. STS Mfg., Inc.*, 834 N.W.2d 683, 686 (Minn. 2013) (quotation omitted). Because we have already determined that the complaint in this case was sufficient to commence the prosecution, the case was timely filed. However, we will briefly address appellant's contention that prosecution of a John Doe DNA complaint nullifies the applicable statute of limitations. Minnesota law requires that to prosecute a felony

burglary charge, "indictments or complaints shall be found or made and filed in the proper court within three years after the commission of the offense." Minn. Stat. § 628.26(j) (2004). In this case, the state filed an amended complaint identifying appellant by his name almost six years after the date of the offense. Appellant contends that the plain meaning of Minn. Stat. § 628.26(j) requires that the felony burglary charge be filed against a named defendant within the three-year statute of limitations. *See State v. DeWitt*, 389 N.W.2d 722, 725–26 (Minn.1986). Appellant points out that the purpose of the statute of limitations is to limit exposure to criminal prosecution to a "certain fixed period of time" and to prevent defendants from having to defend themselves against overly stale criminal charges. *See Reed v. State*, 793 N.W.2d 725, 731 (Minn.2010).

■ A statute of limitation "operate[s] as [a] jurisdictional bar[ ] where the claim subject to the limitations period is purely statutory." *Carlton v. State*, 816 N.W.2d 590, 601 (Minn.2012). Statutes of limitations do not vest defendants with constitutional rights. *United States v. Marion*, 404 U.S. 307, 322–23, 92 S.Ct. 455, 464–65, 30 L.Ed.2d 468 (1971). Under Minnesota law, the purpose of a statute of limitation is threefold: (1) to protect defendants from defending themselves against crimes when the facts "may have become obscured"; (2) to minimize the danger of official punishment for acts in the distant past; and (3) to encourage law enforcement to properly investigate suspected criminal activity. *State v. Danielski*, 348 N.W.2d 352, 355 (Minn.App.1984) (citing *Toussie v. United States*, 397 U.S. 112, 115–16, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970)), *review denied* (Minn. July 26, 1984).

We acknowledge that the use of John Doe DNA complaints can pose problems for a defendant. "DNA's identification value is extremely helpful in many situations; however, it is not conclusive proof of guilt. A defendant should not be deprived of his right to present an adequate defense simply because a scientific test has determined that his genetic material was present at a crime scene." Frank B. Ulmer, *Using DNA Profiles to Obtain "John Doe" Arrest Warrants and Indictments*, 58 Wash. & Lee L.Rev. 1585, 1623 (Fall 2001). In this case, appellant was not prejudiced by any of the potential issues raised in *Danielski*. 348 N.W.2d at 355. There is no evidence in the record that the police did not promptly and thoroughly investigate the burglary and interview appellant once they were informed of his identity by HCSCL. While it took six years for the state to prosecute the crime, appellant failed to demonstrate how the passage of time prejudiced him in the preparation of his defense.

■ Moreover, appellant did not move to dismiss the case because he was denied a speedy trial under the Sixth Amendment to the United States Constitution. *See Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992); *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005) (stating that the right to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 6 of the Minnesota Constitution). As a result, we need not address any concern about delays that occurred after the initial DNA complaint warrant was filed. Any prejudicial delays to a defendant prosecuted under a John Doe DNA arrest warrant or complaint can be addressed on a case-by-case basis, and we note that the Due Process Clause inherent in the Fifth Amendment of the United States Constitution protects defendants from intentional and prejudicial delays by the state. *See United States v. Lovasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 2048, 52 L.Ed.2d 752 (1977); *State v.*

*F.C.R.,* 276 N.W.2d 636, 639 (Minn.1979). "Trial courts have broad discretion to prevent inexcusable delays and promote the public interest in keeping dockets free of stale claims." *Copeland v. Bragge,* 378 N.W.2d 35, 37–38 (Minn.App.1985). In summary, we hold that a John Doe DNA complaint satisfies the applicable statute of limitations when filed within the statute of limitations period.

## DECISION

The complaint charging appellant with burglary satisfied the particularity requirements of the Fourth Amendment and the reasonable certainty requirements of Minn. R.Crim. P. 3.02, subd. 1. Criminal prosecution of appellant was not time-barred because the John Doe DNA complaint was filed within the applicable statute of limitations period.

**Affirmed.**