*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-1781**

State of Minnesota,
Respondent,

vs.

Abdusalam Omar Hussein,
Appellant.

**Filed October 13, 2025
Affirmed
Bratvold, Judge**

Olmsted County District Court
File No. 55-CR-19-7701

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Michael T. Walters, Olmsted County Attorney, James E. Haase, Senior Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Greg Scanlan, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Bratvold, Judge; and Slieter, Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

In this appeal from the final judgments of conviction for unlawful possession of a firearm and two counts of second-degree assault, appellant raises two issues. First, he argues that the district court plainly erred by allowing the state, shortly before trial, to

amend its complaint to add a charge of unlawful firearm possession. Appellant contends that his conviction on that count must be vacated and, for related reasons, he must be resentenced on the second-degree assault convictions. Second, appellant argues that he received ineffective assistance of counsel before and during his stipulated-evidence trial. Because the district court did not plainly err by allowing the state to amend the complaint, we uphold the firearm-possession conviction. But because record is insufficient for this court to determine appellant's ineffective-assistance claim, we decline to address the second issue, which appellant may pursue in a petition for postconviction relief should he elect to file one. Thus, we affirm.

## FACTS

On November 4, 2019, respondent State of Minnesota charged appellant Abdusalam Omar Hussein with second-degree assault with a dangerous weapon under Minn. Stat. § 609.222, subd. 1 (2018) (count one). The state amended the complaint on November 5, 2019, adding a second charge for second-degree assault with a dangerous weapon (count two).

Based on stipulated evidence, the district court found the following: Early in the morning on November 3, 2019, Hussein fled after shooting a man five times at an apartment building in southeast Rochester. After shooting the man at the apartment building, Hussein drove to a convenience store, pointed a gun at another man in the parking lot, threatened to shoot, and drove away. Hussein made a 911 call and stated that he shot someone in southeast Rochester and "was not going to surrender." Law enforcement

2

located Hussein in his vehicle, he drove away, and during the pursuit, Hussein's vehicle rolled over, leading to his arrest.

The state's case against Hussein was delayed, in part because of the COVID-19 pandemic. During district court proceedings, Hussein completed more than one examination to determine whether he was competent to proceed with his defense.[1] After an evaluation and a hearing, the district court found Hussein competent to proceed in January 2020.

In February 2021, Hussein filed a notice of intent to raise a mental-illness defense.[2] The district court ordered another competency examination and evaluation. After a hearing, the district court found Hussein was not competent to proceed in January 2022 and suspended court proceedings. At the district court's order, subsequent competency evaluations and review hearings were completed. In a March 2023 report, an evaluator determined that, while Hussein was still experiencing "ongoing symptoms of mental

---

[1] Minnesota Rule of Criminal Procedure 20.01 governs competency proceedings. "If the prosecutor, defense counsel, or the court, at any time before or after conviction, doubts the defendant's competency to proceed, the prosecutor or defense counsel must make a competency motion . . . or the court on its initiative must raise the issue." Minn. R. Crim. P. 20.01, subd. 3(a). If the district court determines that there is a "reasonable basis to doubt the defendant's competency" and that the state has probable cause for the charges, then the district court must suspend the proceedings. *Id.*, subd. 3(b). After receiving a competency-evaluation report, a district court holds a competency hearing in which the party asserting that the defendant is competent has the burden to show competency by a preponderance of the evidence. *Id.*, subd. 5.

[2] Minnesota Rule of Criminal Procedure 20.02 governs the procedure to assert a defense of not guilty by reason of mental illness or cognitive impairment. If a defendant pleads both not guilty to the charges and not guilty based on a mental-illness defense, the district court "must separate the two defenses," hear and determine the not-guilty defense first, and then determine the mental-illness defense second. Minn. R. Crim. P. 20.02, subd. 7(a).

illness," he was competent "to fully participate in his defense." The district court proceeded with scheduling Hussein's case.

In December 2023, Hussein renewed his notice that he would be raising "the defense of not guilty by reason of mental deficiency." In March 2024, Hussein demanded a speedy trial, and the district court scheduled a jury trial for April 15, 2024.

On April 12, 2024, three days before trial, the state amended the complaint a second time, adding a charge for unlawful firearm possession under Minn. Stat. § 624.713, subd. 1(2) (2018) (count three). The second amended complaint alleged the same offense facts as the first amended complaint but added the allegation that Hussein was convicted of a fifth-degree controlled-substance crime in 2012 as the basis for the firearm-possession charge.

At a pretrial hearing on April 12, all parties appeared. In response to the district court's inquiry, Hussein's attorney stated that he was aware of the second amended complaint and was not objecting "at this time" but was "likely reserving that." Hussein entered a plea of not guilty to the added count three "by reason of mental deficiency." Next, Hussein stated he wanted to waive his right to a jury trial. The district court inquired of Hussein, who was under oath; based on the colloquy, the district court found that Hussein was "knowingly, freely, and voluntarily" waiving his right to a jury trial.

On April 15, 2024, the parties appeared for a court trial and Hussein asked to proceed on stipulated evidence. After some discussion, the parties agreed to proceed with stipulated evidence for the first phase of trial—determining guilt on the charges in the

second amended complaint. The parties agreed on the contents of the stipulated evidence[3] and the timing for submissions and proposed findings, and the parties also identified the witnesses for the second phase of trial—determining Hussein's mental-illness defense.

Before proceeding, the district court inquired of Hussein about the stipulated-evidence procedure, engaged him in a colloquy about the waiver, and discussed a signed waiver that Hussein prepared with his attorney. The district court found that Hussein was "entering into this knowingly, freely, and voluntarily" and that Hussein "understands the constitutional rights that he's waiving in order to proceed in this fashion." The district court stated that it would "allow[] him to do so" and received Hussein's written waiver of trial rights and agreement to proceed on stipulated evidence.

The next day, the parties submitted proposed findings of fact. The parties' proposed factual findings were similar to each other. Hussein's proposed findings concluded that all three counts had been proved beyond a reasonable doubt.

On April 18, 2024, the parties appeared for the second phase of trial. Before proceeding with evidence, the parties discussed the proposed factual findings on the record. The prosecuting attorney expressed concern because Hussein's proposed findings "were essentially the same as the State's proposed findings and advocated for the same outcome," but "normally when a defense counsel . . . concedes or stipulates to elements [of an offense], that must be done with . . . the Defendant's permission, consent, or acquiescence." The prosecuting attorney stated they believed "that [was] the case here" but

---

[3] The parties agreed to admit exhibit 1, "a set of investigative materials," and exhibit 2, "a certified record of conviction," as stipulated evidence.

asked the district court "to make a record, before it announce[d] its findings, that Mr. Hussein was in accordance with the submission that was presented to the court."

The district court agreed that the proposed findings from the state and Hussein were very similar but added that the district court "assumed that [Hussein] wasn't conceding and considered the record as a whole." The district court inquired of Hussein's attorney, who stated that "we did not have an intent to concede." The district court stated that it considered the proposed findings "only in the light of [its] own independent review" of the stipulated evidence. The district court then found Hussein guilty of all three counts and later filed written findings of fact and conclusions of law that aligned with the parties' proposed orders.

The district court then proceeded with the second phase of trial—Hussein's mental-illness defense. The district court heard testimony from Hussein, a psychiatric healthcare provider who treated Hussein, and the court-appointed psychological examiner who conducted Hussein's mental evaluations under rule 20.01 for competency and rule 20.02 for his defense. The district court also received the healthcare provider's curriculum vitae, a letter from the healthcare provider, and a report from the psychological examiner. The parties submitted briefs.

The district court prepared written findings of fact, conclusions of law, and an order. The district court found that Hussein had been diagnosed with post-traumatic stress disorder (PTSD), paranoid-type schizophrenia, and chemical dependency. Hussein's "PTSD is the result of horrific incidents that began in his childhood." The district court found Hussein's testimony about his childhood as a soldier in Somalia to be credible and

6

included detailed findings about Hussein's experiences. The district court determined that, based on the evidence presented during the second phase of trial, Hussein was suffering from mental illness at the time of the offenses, but Hussein did not establish that he "did not understand the wrongfulness of his actions . . . by a preponderance of the evidence."

The district court found Hussein guilty of all three counts at a May 2024 hearing. The district court sentenced Hussein to 60 months for the firearm-possession conviction, with the sentences for the two assaults to be served concurrently.

Hussein appeals.

## DECISION

Hussein raises four issues on appeal, which we reorganize slightly into two issues.[4] First, he argues that his conviction for unlawful firearm possession must be vacated because the applicable statute of limitations expired before the state amended the complaint to add the charge. Second, he argues that he received ineffective assistance of counsel before and during trial. We address these arguments in turn.

---

[4] On appeal, Hussein's brief identifies four issues: (1) his firearm-possession conviction must be vacated because "the crime was charged in violation of the statute of limitations"; (2) Hussein's trial counsel provided ineffective assistance of counsel "by failing to seek dismissal of the firearm possession count"; (3) Hussein's sentences on the second-degree assault convictions "must be corrected when the firearm possession conviction is vacated"; and (4) Hussein's trial counsel provided ineffective assistance of counsel "by conceding all elements of the charged offenses without Hussein's consent or acquiescence." This opinion considers issues (1) and (3) together and considers issues (2) and (4) together.

**I.     Hussein is not entitled to relief on count three based on the statute of limitations.**

Hussein argues that the applicable statute of limitations barred count three, unlawful firearm possession, because the state amended its complaint after the limitations period expired. Appellate courts review "the construction and application of a statute of limitations" de novo. *State v. Carlson*, 845 N.W.2d 827, 832 (Minn. App. 2014) (quotation omitted), *rev. denied* (Minn. June 17, 2014).

The legislature set out limitation periods for charging criminal offenses by indictment or complaint in Minn. Stat. § 628.26 (2024). Parts (a) through (j) of section 628.26 provide limitation periods for specific offenses, but do not include unlawful firearm possession. Minn. Stat. § 628.26(a)-(j). There is a catch-all limitation period: "In all other cases, indictments or complaints shall be found or made and filed in the proper court *within three years after the commission of the offense*." Minn. Stat. § 628.26(k) (emphasis added). Therefore, the limitations period for unlawful firearm possession is three years after the offense is committed.

The state's second amended complaint alleged that Hussein's firearm-possession offense occurred on November 3, 2019, and the state amended the complaint to add that charge on April 12, 2024. Hussein argues that the district court plainly erred by allowing the state to amend the complaint to add the firearm-possession count after the limitations period expired. The state agrees that it amended the complaint to add count three after the three-year limitations period expired, but argues that Hussein forfeited any argument about

8

the statute of limitations by failing to raise it during district court proceedings. The state also contends that plain-error review does not apply.

Generally, when an appellant in a criminal case fails to raise an issue to the district court, it is either forfeited or reviewed for plain error. *Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996) (determining the appellant forfeited an objection to a warrantless search because the issue was not raised during district court proceedings); Minn. R. Crim. P. 31.02 ("Plain error affecting a substantial right can be considered by the court . . . on appeal even if it was not brought to the trial court's attention."). Appellate courts generally apply plain-error review when an appellant fails to object during trial proceedings. *Montanaro v. State*, 802 N.W.2d 726, 732-33 (Minn. 2011) (observing that the plain-error rule gives appellate courts "the discretion to review an unobjected-to trial error" and reviewing unobjected-to jury instruction); *see also State v. Turner*, No. A24-0219, 2025 WL 368539, at *6 (Minn. App. Feb. 3, 2025) (observing that "plain-error review is generally reserved for unobjected-to trial errors" and listing supreme court opinions (emphasis omitted)).[5]

The statute of limitations provides an affirmative defense that is not jurisdictional. *Reed v. State*, 793 N.W.2d 725, 731-32 (Minn. 2010). We need not determine whether Hussein forfeited this issue or whether plain-error review applies to a nonjurisdictional affirmative defense. Instead, we may assume without deciding that plain-error review

---

[5] Nonprecedential opinions "are not binding authority" but "may be cited as persuasive authority." Minn. R. Civ. App. P. 136.01, subd. 1(c); *see State v. Monyak*, 14 N.W.3d 210, 215 n.2 (Minn. App. 2024) (applying rule 136.01, subd. 1(c) in the criminal context).

applies and determine whether the district court plainly erred by allowing the state to amend its complaint to add count three.

Plain-error review determines whether (1) there was an error, (2) the error was plain, and (3) the error affected Hussein's substantial rights. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998). An appellate court will reverse if it concludes that the three requirements are satisfied and that the error must be addressed "to ensure fairness and the integrity of the judicial proceedings." *Id.* If "any one of the requirements is not satisfied," this court "need not address any of the others." *Montanaro*, 802 N.W.2d at 732.

We turn to the first requirement of the plain-error test. "An error is plain if it is clear and obvious; usually this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Matthews*, 779 N.W.2d 543, 549 (Minn. 2010). An error is not plain if the appellate courts have not ruled on the issue. *See State v. Webster*, 894 N.W.2d 782, 787 (Minn. 2017) (concluding that the district court did not plainly err by giving a jury instruction because the instruction was consistent with the pattern instruction and did "not contravene existing case law").

Hussein appears to argue that the district court plainly erred by allowing the state to add count three because the state amended the complaint after the limitations period expired. Hussein relies on the limitations statute, Minn. Stat. § 628.26, and does not discuss any caselaw. The state counters that the district court did not plainly err because the initial

10

complaint was timely and tolled the statute of limitations, citing the rules of criminal procedure and caselaw.[6]

The state relies on the supreme court's ruling that the statute of limitations is "in effect, 'tolled'" by a timely indictment, as discussed in *State v. Dwire*, 409 N.W.2d 498, 503 (Minn. 1987). In *Dwire*, the state filed new criminal complaints while earlier indictments against Dwire were pending appeal. 409 N.W.2d at 500. After this court dismissed the indictments, the district court dismissed the complaints on a procedural ground and the state appealed. *Id.* This court reversed, and the supreme court granted review, asking the parties to brief whether the limitations period expired while the indictments were pending appeal. *Id.* at 500, 503. The supreme court ultimately affirmed, deciding that the limitations period was tolled "during the pendency of an indictment containing a defect curable by amendment." *Id.* at 503. The supreme court also determined that the original indictments "put [Dwire] on timely notice" because they were "filed within the statutory timeframe" and indicated that Dwire would "be called to account for [his] activities and should prepare a defense." *Id.* (quotation omitted); *see also State v. Heffelfinger*, 266 N.W. 751, 754-55 (Minn. 1936) (holding that an amended indictment filed after the statute of limitations expired was a continuation of the original indictment and related back to the date of the original indictment).

---

[6] A district court has discretion to allow the state to amend its complaint. "Under Minn. R. Crim. P. 3.04, subd. 2, the trial court is relatively free to permit amendments to charge additional offenses before trial is commenced, provided the trial court allows continuances where needed." *State v. Bluhm*, 460 N.W.2d 22, 24 (Minn. 1990). Before trial begins, a district court is "free to allow an amendment charging an additional or greater offense." *Id.*

*Dwire* supports the state's argument that the district court did not plainly err, based on *Dwire*'s reasoning that filing a timely criminal complaint or indictment tolls the limitations period. 409 N.W.2d at 503. *Dwire* emphasizes the importance of giving a defendant notice of the need to prepare a defense. *Id.* And Hussein arguably had notice based on the state's allegations that Hussein had a gun in the original and first amended complaints. But other facts in *Dwire* may be materially different from the facts here—the state amended Hussein's complaint to add a new charge, not to remedy a defect in the original complaint.[7]

The state points out that this court has distinguished *Dwire* and enforced a limitations period in a nonprecedential opinion that the state describes as an "outlier" and of which, in a footnote, it invites us to "abrogate the holding." In *State v. McNitt,* the state first charged McNitt "by complaint with one count of possession of pornographic work involving minors." No. A17-0092, 2017 WL 3379191, at *1 (Minn. App. Aug. 7, 2017), *rev. denied* (Minn. Oct. 17, 2017). A few days before trial and after the limitations period expired, "the state amended the complaint to add two counts of possession of pornographic work involving minors" based on files found on the same hard drive with the files that led

---

[7] In other contexts, this court has considered whether the statute of limitations bars the state from amending a criminal complaint and held that it does not. *See, e.g.*, *Carlson*, 845 N.W.2d at 833-34 (deciding the state's initial "John Doe DNA complaint" filed within the limitations period "satisfie[d] the applicable statute of limitations" and allowed the state to amend the complaint to name the defendant after the limitations period expired); *State v. Gruska*, No. C8-95-414, 1995 WL 579422, at *1 (Minn. App. Oct. 3, 1995) (rejecting the appellant's argument that the statute of limitations barred the state's amendment to add a second theft-by-swindle count on the first day of trial, reasoning that an "amendment filed after the statute of limitations has expired is a continuation of the original indictment or complaint and relates back to the filing date of the original complaint or indictment").

to the original charge. *Id.* at \*1, \*3. "McNitt moved to dismiss the additional counts as beyond the statute of limitations, and the district court denied McNitt's motion." *Id.* at \*1. McNitt appealed, and this court reversed on the limitations issue. *Id.* at \*1-3.

This court reasoned that, unlike the indictment in *Dwire*, "the original complaint against McNitt had no defect." *Id.* at \*2. Second, the court of appeals emphasized that the state "added two additional counts for possession of pornographic work involving minors at the same severity level as the original charge, thereby tripling the number of charges, and increasing the possible sentence, against McNitt." *Id.* This court therefore concluded "that the district court erred as a matter of law in determining that the statute of limitations was tolled when the state filed the first count." *Id.* at \*3.

We need not resolve any perceived tension between *Dwire* and *McNitt*. Hussein is only entitled to relief if the error is plain. An error is plain only if it is "clear and obvious," which "usually" means that the error "violates or contradicts case law, a rule, or an applicable standard of conduct." *Matthews*, 779 N.W.2d at 549. An error is not plain if it does not conflict with existing caselaw. *See Webster*, 894 N.W.2d at 787 (rejecting the appellant's jury-instruction challenge, in part because "the instruction does not contravene existing caselaw").

No precedential caselaw suggests that the district court plainly erred by allowing the state to amend its complaint to add count three. While *McNitt* suggests that allowing new charges on the eve of trial was an abuse of discretion, this court did not apply plain-error review in *McNitt* because McNitt—unlike Hussein—moved to dismiss the new charges in district court. *McNitt*, 2017 WL 3379191, at \*1. Also, *McNitt* is a

13

nonprecedential opinion, which is "not binding authority." Minn. R. Civ. App. P. 136.01, subd. 1(c). In contrast, the supreme court in *Dwire* established precedent on the central point of law, and while factually different, *Dwire* suggests that filing a timely initial complaint tolls the statute of limitations. *See Dwire*, 409 N.W.2d at 503.

We therefore conclude that the district court did not plainly err by allowing the state to add count three after the limitations period expired. Because we determine that any error is not plain, we need not consider the other plain-error requirements. *See Montanaro*, 802 N.W.2d at 732. And we therefore need not consider Hussein's related argument that vacating his conviction for unlawful firearm possession requires him to be resentenced on other convictions.

**II.    Because the record is insufficient to determine whether Hussein received ineffective assistance of counsel, we decline to decide the issue.**

Hussein argues that he is entitled to a new trial because his attorney provided ineffective assistance of counsel. "Generally, an ineffective-assistance-of-counsel claim should be raised in a postconviction petition for relief, rather than on direct appeal, because an evidentiary hearing, if granted, provides the district court with additional facts to explain the parties' decisions." *State v. Ellis-Strong*, 899 N.W.2d 531, 535 (Minn. App. 2017). But "[w]hen a claim of ineffective assistance of trial counsel can be determined on the basis of the trial record, the claim must be brought on direct appeal." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013).

A criminal defendant has a constitutional right to the effective assistance of counsel. U.S. Const. amend. VI; Minn. Const. art. 1, § 6; *State v. Rhodes*, 657 N.W.2d 823, 842

14

(Minn. 2003). Appellate courts use a two-step test to determine an ineffective-assistance-of-counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984). *Rhodes*, 657 N.W.2d at 842. To prove ineffective assistance of counsel, an appellant must demonstrate (1) "that counsel's performance fell below an objective standard of reasonableness" and (2) "that a reasonable probability exists that the outcome would have been different but for counsel's errors." *Id.* (quotation omitted). Appellate courts review claims of ineffective assistance of counsel de novo. *Id.* A reviewing court "need not address both the performance and prejudice prongs if one is determinative." *Id.*

Under the first step, the reasonableness of Hussein's attorney's performance, "[o]bjective reasonableness requires that counsel exercise the customary skills and diligence that a reasonably competent attorney would exercise under the circumstances." *State v. Miller*, 754 N.W.2d 686, 709 (Minn. 2008) (quotation omitted). "There is a strong presumption that a counsel's performance falls within the wide range of reasonable professional assistance." *Id.* (quotations omitted). Also, we generally refuse to consider trial strategy as part of the first step because "[w]hat evidence to present to the jury, including which defenses to raise at trial and what witnesses to call, represent an attorney's decision regarding trial tactics which lie within the proper discretion of trial counsel and will not be reviewed later for competence." *State v. Voorhees*, 596 N.W.2d 241, 255 (Minn. 1999).

Hussein argues that he received ineffective assistance of counsel for two reasons. First, he argues that his counsel provided ineffective assistance by failing to object to or move to dismiss count three. Second, he argues that his counsel provided ineffective

15

assistance by submitting proposed findings that "conceded every element of the charged offenses without securing Hussein's consent to do so." We address his arguments in turn.

## A.    Statute of Limitations

Hussein argues that his attorney's conduct fell below the objective standard of reasonableness because he failed to object to or move to dismiss count three based on the statute of limitations. The state argues that "the statute of limitations did not bar pretrial amendments to the complaint," and therefore, Hussein's attorney "had no basis to object to the amendment, and his representation did not fall below an objective standard of reasonableness."

Caselaw suggests that an attorney's performance may be deficient for failure to make a dispositive motion. *See Johnson v. State*, 654 N.W.2d 126, 131-33 (Minn. App. 2002) (concluding that trial counsel provided ineffective assistance by failing to move to suppress DNA evidence), *rev'd on other grounds*, 673 N.W.2d 144 (Minn. 2004). On the other hand, decisions like "which defenses to raise at trial" usually "represent an attorney's decision regarding trial tactics which lie within the proper discretion of trial counsel and will not be reviewed later for competence." *Voorhees*, 596 N.W.2d at 255. The supreme court has concluded that "waiving a statute-of-limitations claim to a lesser offense may be a valid trial strategy designed to avoid the risk of an unwarranted conviction." *Reed*, 793 N.W.2d at 734.

As discussed above, some nonprecedential caselaw would support an objection to or motion to dismiss count three based on the statute of limitations. *See McNitt*, 2017 WL 3379191, at *2-3. And Hussein argues that "[n]o reasonable strategy exists for acquiescing

16

to the illegal charge because it was not a lesser offense; in fact, it carried the longest sentence of the three charges" and "the firearm-possession charge made it more likely that the state would get a conviction because the possession was easily provable."

We conclude that we lack an adequate record on which to determine whether Hussein's attorney made an objectively reasonable and perhaps strategic decision not to argue that count three was time-barred. A postconviction evidentiary hearing, if granted, may provide "additional facts to explain the parties' decisions." *Ellis-Strong*, 899 N.W.2d at 535. For example, we have no record on whether Hussein's attorney researched the limitations issue or whether Hussein consented in the decision not to challenge count three as time-barred.

We decline to rule on this claim for ineffective assistance of counsel. Hussein may choose to raise this issue in a petition for postconviction relief. *See State v. Gustafson*, 610 N.W.2d 314, 321 (Minn. 2000) ("Therefore, while we decline to reach the merits of this issue, Gustafson's right to pursue an ineffective assistance of counsel claim in a petition for postconviction relief is preserved.").

**B.     Concession of Guilt**

Hussein argues that his counsel provided ineffective assistance by conceding to the elements of his offenses in the proposed findings submitted during the first phase of his trial "without securing Hussein's consent to do so." The state argues that the record "demonstrates that Hussein acquiesced in this understandable trial strategy" and that, "[if] it cannot be discerned whether or not Hussein acquiesced in the trial strategy, this Court may decline to decide on the issue and allow Hussein to seek postconviction relief."

17

Generally, "[a]dmitting a client's guilt without the client's consent or acquiescence is deemed ineffective assistance of counsel and is grounds for a new trial." *State v. Provost*, 490 N.W.2d 93, 97 (Minn. 1992). But "[e]ven if counsel admits guilt without the defendant's permission, no error will be found if the defendant acquiesced in the strategy." *Dukes v. State*, 621 N.W.2d 246, 254 (Minn. 2001). Appellate courts "apply a two-step analysis to ineffective-assistance claims involving an alleged unauthorized concession of guilt." *State v. Luby*, 904 N.W.2d 453, 457 (Minn. 2017); *see also State v. Prtine*, 784 N.W.2d 303, 318 (Minn. 2010) (applying two-step analysis).

First, we "review the record de novo to determine whether defense counsel made a concession of guilt." *Luby*, 904 N.W.2d at 457. Hussein's proposed findings of fact discussed each of the three charges. For count one, the proposed factual findings stated that Hussein "intentionally inflicted and/or attempted to inflict bodily harm" using a firearm "on or about November 3, 2019, in Olmsted County." For count two, the proposed findings stated that Hussein intended "to cause [the convenience-store victim] to fear immediate bodily harm or death" using a firearm, "on or about November 3, 2019, in Olmsted County." For count three, the proposed findings stated that Hussein directly and "knowingly possessed a firearm and/or ammunition" in Olmsted County "on or about November 3, 2019," and that he was "ineligible to possess a firearm" based on a controlled-substance felony. We conclude that Hussein's proposed findings conceded his guilt on each of the three charges.

Second, we consider whether Hussein "acquiesced in that concession." *Id.* (quotation omitted). The parties agree that there is no express consent to the concession of

18

guilt. As a result, this court looks "at the entire record to determine if the defendant acquiesced in his counsel's strategy." *Id.* at 459 (quotation omitted). "Acquiescence may be implied in certain circumstances, such as (1) when defense counsel uses the concession strategy throughout trial without objection from the defendant, or (2) when the concession was an understandable strategy and the defendant was present, understood a concession was being made, but failed to object." *Id.* (quotation omitted).

Hussein argues that conceding his guilt on all charges was not a reasonable strategy, contrasting his bench trial with the jury trial in *Prtine*, in which the supreme court noted that a concession "may have been a valid strategy to build credibility with the jury." 784 N.W.2d at 318. Hussein contends that conceding his guilt did not build his credibility because there was no jury. He accordingly argues that conceding his guilt was not a reasonable strategy and that he did not acquiesce to his attorney doing so.

The state counters that "Hussein's trial strategy centered on his affirmative defense that he was not responsible for his actions due to a mental defect" and that "[i]t was an understandable strategy for [Hussein's attorney] to move through the guilt phase of the bifurcated trial with the least amount of friction to concentrate the fact-finder's attention on the mental illness defense." The state also points out that the prosecuting attorney questioned whether Hussein's proposed findings conceded his guilt in open court, "Hussein had a complete opportunity to express any objection to the proposed findings submitted by his attorney," and "Hussein raised no such objection."

We conclude that conceding Hussein's guilt on all charges may have been part of an articulable and valid trial strategy to focus on the mental-illness defense and that it is

19

possible that Hussein may have consented or acquiesced in this strategy. The record, however, does not allow us to determine whether Hussein did so. We recognize that Hussein did not object to the proposed findings when the prosecuting attorney aired concerns about the submitted findings. But Hussein's failure to object must be considered in light of the district court explicitly stating that it "in no way considered that Mr. Hussein was conceding . . . to any of the facts in that they would support a guilty verdict."

We have no record related to Hussein's communications with his attorney on this issue. We therefore conclude that the record is not adequate to determine whether Hussein received ineffective assistance of counsel based on his proposed findings during phase one of his trial, and we decline to decide this claim of ineffective assistance of counsel. Hussein may raise this issue in a petition for postconviction relief if he so chooses.

**Affirmed.**